UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

DR. ALAN SACERDOTE, DR. HERBERT SAMUELS, MARK CRISPIN MILLER, MARIE E. MONACO, DR. SHULAMITH LALA STRAUSSNER, AND JAMES B. BROWN, individually and as representatives of a class of participants and beneficiaries on behalf of the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration and the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration,

       Plaintiffs,

   -v-

NEW YORK UNIVERSITY SCHOOL OF MEDICINE, CAMMACK LARHETTE ADVISORS, LLC, RETIREMENT PLAN COMMITTEE, RICHARD BINGM MICHAEL BURKE, CATHERINE CASEY, MARTIN DORPH, SABRINA ELLIS, THOMAS FEUERSTEIN, ANDREW GORDON, PARTICIA HALLEY, TIM HESLER, KATHLEEN JACOBS, MARINA KARTANOS, ANN KRAUS, MARGARET MEAGHER, CYNTHIA NASCIMIENTO, NANCY SANCHEZ, TINA SURH, LINDA WOODRUFF, MAURICE MAERTENS, JOSEPH MONTELEONE, RAY OQUENDO, CHRIS TANG,

       Defendants.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 23, 2018

17-cv-8834 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

  On August 9, 2016, plaintiffs filed an action under the Employee Retirement Income Security Act of 1974 ("ERISA") against New York University ("Sacerdote I").

(16-cv-6284, ECF No. 1.) On August 25, 2017, the Court dismissed Claims I, II, IV, VI, and VII in their entirety, and Counts III and V in part. (16-cv-6284, ECF No. 79.) The Court subsequently denied plaintiffs' motion to file a second amended complaint adding defendants and reinstating certain claims, (16-cv-6284, ECF No. 100), as well at their motion for reconsideration, (16-cv-6284, ECF No. 101.) Sacerdote I is set to begin trial on the remaining claims on April 16, 2018.

On November 13, 2017, plaintiffs filed a new action against NYU School of Medicine, the Retirement Plan Committee, and Cammack LaRhette Advisors, LLC ("Cammack"), as well as individual defendants Michael Burke, Richard Bing, Catherine Casey, Martin Dorph, Sabrina Ellis, Thomas Feuerstein, Andrew Gordon, Particia Halley, Tim Hesler, Kathleen Jacobs, Marina Kartanos, Ann Kraus, Margaret Meagher, Cynthia Nascimiento, Nancy Sanchez, Tina Surh, Linda Woodruff, Maurice Maertens, Joseph Monteleone, Ray Oquendo, and Chris Tang (collectively, "defendants"). (ECF No. 1.[1]) The Complaint and Amended Complaint in Sacerdote II utilize discovery gathered in Sacerdote I to bolster plaintiffs' claims. All but one of the Sacerdote II defendants are part of NYU, either as a division or as an employee. Pending now before the Court is defendants' motion to dismiss, claiming in large part that plaintiffs cannot file the same case twice in an attempt to avoid the Court's previous rulings. The Court agrees.

While procedurally positioned as a new case, the Amended Complaint in Sacerdote II is a blatant attempt to replead an existing action. The Court construes

---

[1] All ECF citations in this opinion are to docket number 17-cv-8834 unless otherwise noted.

it as a motion for reconsideration based on new evidence and a motion for joinder. The motion to dismiss is GRANTED.

I. LEGAL PRINCIPLES

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). In deciding whether to do so, a district court must "consider the equities of the situation when exercising its discretion." Curtis, 226 F.3d at 138. Dismissal may be appropriate because "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Id. at 139. "[T]he court must assess whether the second suit raises issues that should have been brought in the first." Id. at 140.

Parties may not institute a new action to avoid a court's previous denial of a motion to amend a complaint in a separate, ongoing case. Id. at 138; see also James v. AT&T Corp., 334 F. Supp. 2d 410, 412 (S.D.N.Y. 2004) ("Filing a second identical action is not the proper procedure for . . . adding additional parties."); see also Morency v. Vill. of Lynbrook, 1 F. Supp. 3d 58, 62 (E.D.N.Y. 2014) (noting that "duplicative complaints may be not be filed by a plaintiff for the purpose of circumventing the rules pertaining to the amendment of complaints" (internal quotation omitted)).

When allegations duplicate claims that are being raised in another case by the same plaintiffs, the suits themselves may be duplicative, especially if the second-filed suit "involves essentially the same factual background and legal questions as those presented" in the previously filed suit.  See Lopez v. Ferguson, 361 Fed. App'x 225, 226 (2d Cir. 2010).  In addition, complaints against an employer and employees may be duplicative and are often dismissed.  See, e.g., id. at 226; Barclay v. Lowe, 131 Fed. App'x 778, 779 (2d Cir. 2005).  The same goes for parallel complaints in actions against a parent and subsidiary organization, see James, 334 F. Supp. 2d at 411, and complaints against parties that are in privity with one another, see DiGennaro v. Whitehair, 467 Fed. App'x 42, 44 (2d Cir. 2012).

II. DISCUSSION

It is clear that Sacerdote II is duplicative of Sacerdote I.  Plaintiffs agree that the "defendants in [Sacerdote II] currently are all agents or employees of the sole defendant in [Sacerdote I] or the New York University School of Medicine."  (16-cv-6284, ECF No. 125.)  The individual defendants in Sacerdote II are employees of NYU, the defendant in Sacerdote I, (ECF No. 105, Am. Compl. ¶ 35), and NYU School of Medicine is, according to the Amended Complaint, "a division of New York University," (id. ¶ 29).  The fact that the defendants are technically different is not dispositive.  The defendants in both suits have the same counsel and "a sufficiently close relationship . . . such that NYU '"control[s] or substantially participate[s] in the control of the presentation on behalf of a party' to the prior action."  Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d

4

Cir. 1995) (quoting National Fuel Gas Distribution Corp. v. TGX Corp., 950 F.2d 829, 839 (2d Cir. 1991)).  For the purposes of this action, NYU is in privity with the Sacerdote II defendants and will adequately represent their interests.  See DiGennaro, 467 Fed. App'x at 44 (affirming a dismissal of a duplicative case when the defendant in the second case "was not a named defendant in the original action," but was "in privity with the defendants named in the original complaint" and the second case's defendant's "interests are adequately represented by those in the first suit who are 'vested with the authority of representation.'" (quoting Barclay v. Lowe, 131 Fed. App'x 778, 779 (2d Cir. 2005))); see also Alpert's Newspaper Delivery Inc. v. N.Y. Times Co., 876 F.2d 266, 270 (2d Cir. 1989) ("The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis.").[2]

Plaintiffs argue that the defendants in each case are not in privity, but its reliance on Northern Assurance is misplaced.  There, a magistrate judge had denied a plaintiff's untimely request to amend a complaint to add a defendant; the plaintiff then filed a new lawsuit against that defendant with substantially similar claims, and the district court dismissed it as res judicata.  Northern Assurance Co. v.

---

[2] In fact, the Amended Complaint in Sacerdote I describes NYU as "the Plans' Administrator under 29 U.S.C. §1002(16)(A)(i) with exclusive responsibility and complete discretionary authority to control the operation, management and administration of the Plans, with all powers necessary to enable NYU to properly carry out such responsibilities, including the selection and compensation of the providers of administrative services to the Plans and the selection, monitoring, and removal of the investment options made available to participants for the investment of their contributions and provision of their retirement income." (16-cv-6284, ECF No. 39, Am. Compl. ¶ 26.)  With the exception of the word "exclusive," plaintiff makes the same allegations as to NYU School of Medicine, (Am. Compl. ¶ 30), and substantially similar allegations as to the Committee, (id. ¶ 36).

Square D Co., 201 F.3d 84, 86 (2d. Cir. 2000).  The Second Circuit reversed that dismissal.  Id.  However, the second lawsuit in Northern Assurance was against a defendant that was entirely unrelated to the defendant in the first suit.  The suit had arisen out of a home fire; one defendant was the electric company and the other was the manufacturer of the home's circuit breaker.  They were different entities with different states of incorporation and different principal places of business.  The circumstances are not analogous to Sacerdote I and Sacerdote II, in which the defendants are closely related.

Plaintiffs argue further that NYU and the Sacerdote II defendants have divergent interests because NYU cannot be held liable for the "entities or persons" that caused the Plan's losses.  But the argument that NYU "may argue at trial that it has no responsibility or liability for the imprudent acts of the Committee or its members," (Mem. Opp. at 11), does not mean that it does not in fact have responsibility or liability; in fact, plaintiffs are likely to strongly counter that argument at trial.  Speculation that, at trial, NYU would blame the Committee but the Committee would blame NYU does not warrant two duplicative actions.  Ruling otherwise would suggest that the suits in which entities, their subdivisions, and employees are co-defendants—of which there are many—should be split.

While two new claims are against defendant Cammack only, that is not enough to make the entire case a new and separate action.  Those claims should

have been brought by joining Cammack earlier in the Sacerdote I litigation.³  In addition, the Court has granted class certification to plaintiffs in Sacerdote I; as plaintiffs noted, there is a "unity of parties-in-interest" between the two cases.  (16-cv-6284, ECF No. 125.)  Accordingly, the plaintiffs in Sacerdote I who may recover encompass the same set of employees that could recover in this case.

Moreover, resolution of the claims in Sacerdote II relies on the same set of facts as resolution of Sacerdote I.  The Amended Complaint in each action attacks the Plans in the same way, using the same descriptions of each.  The allegations in both cases rely on the management of the Plans—accordingly, the set of facts underlying each case is the same.  Any new claims in Sacerdote II are, to a large extent, repackaged versions of claims dismissed by the Court in Sacerdote I.  While several claims are new in theory, they merely rephrase previously brought claims and, more importantly, are based on the same set of facts at issue in Sacerdote I.

For example, both cases would require inquiries into whether the various defendants were in fact fiduciaries to the Plans, and if so, whether any breach of their fiduciary duties occurred.  Depositions would be of the same individuals, and

---

³ Plaintiffs argue that the amended complaint in Sacerdote II contains four claims not included in Sacerdote I, including: "allegations that Defendants breached their fiduciary duties and engaged in prohibited transactions by (1) allowing TIAA to mandate the inclusion of the CREF Stock Account and Money Market Account in the Plans and to require that it provide recordkeeping for its proprietary products; (2) failing to monitor and control the Plans' administrative fees paid through revenue sharing, resulting in the Plans paying annual administrative fees that were six to eight times higher than the market rate for the same services; (3) retaining imprudent investment options, including the CREF Stock and TIAA Real Estate Account, which both had long histories of dramatic underperformance and excessive fees; and (4) providing higher-cost share classes of dozens of the Plans' mutual funds, instead of identical lower-cost share classes of those same funds."  (ECF No. 133, Mem. in Opp. to Def.'s Mot. to Dismiss Am. Compl. ("Mem. Opp.") at 8.)  However, these claims do not arise from facts separate from those in Sacerdote I; plaintiffs could have attempted to bring these claims in that case but failed to do so.

7

to a large extent, document production would also overlap. In fact, plaintiffs themselves requested and received permission from the Court to use the confidential discovery materials—consisting of over 160,000 pages—from Sacerdote I in Sacerdote II, in an effort to "avoid inefficient and duplicative discovery." (16-cv-6284, ECF No. 142.) Specifically, they noted that Sacerdote I's narrowed possibilities of theories of recovery (i.e., breach of the duty of prudence only) are the result of this Court's dismissal of many of plaintiffs' original allegations—plaintiffs cannot avoid that ruling by simply filing another case with the same claims. In fact, plaintiffs admitted in depositions that Sacerdote II is a way "to get the question of the fees charged for investing back on the table." (Ex. 2, Brown Dep. Tr., at 28:2-4.) Furthermore, plaintiffs' brief in opposition to the motion to dismiss acknowledges the "duplicative litigation" and notes that Sacerdote II was filed "[g]iven the Court's denial of the motion for leave to amend, dismissal of the failure-to-monitor claim, and the prospect that NYU could disclaim liability based on having delegated its duties to the committee." (Mem. Opp. at 7.)

Sacerdote II is more properly characterized as a type of Rule 15 motion to amend, a motion for reconsideration, and/or a motion for joinder in Sacerdote I. But in fact, plaintiffs have already tried several of those avenues and such attempts have been denied by the Court. (See 16-cv-6284, ECF Nos. 100, 101.) Plaintiffs are not entitled to another bite at the apple simply because they have repackaged various claims and named more specific defendants within the NYU umbrella.

III.  CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED in full.  The Clerk of Court is directed to close the open motion at ECF No. 117 and to terminate case 17-cv-8834.

SO ORDERED.

Dated:   New York, New York
         February 23, 2018

_____
KATHERINE B. FORREST
United States District Judge