UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DR. ALAN SACERDOTE, DR. HERBERT
SAMUELS, MARK CRISPIN MILLER,
MARIE E. MONACO, DR. SHULAMITH
LALA STRAUSSNER, AND JAMES B.
BROWN, individually and as representatives of
a class of participants and beneficiaries on
behalf of the NYU School of Medicine
Retirement Plan for Members of the Faculty,
Professional Research Staff and Administration
and the New York University Retirement Plan
for Members of the Faculty, Professional
Research Staff and Administration,

                                        Plaintiffs,            17-CV-8834 (AT)(VF)

                    -against-                                  ORDER

CAMMACK LARHETTE ADVISORS, LLC,
                                        Defendant.

------------------------------------------------------------------X

VALERIE FIGUEREDO, United States Magistrate Judge.

On September 18, 2018, New York University ("NYU") School of Medicine filed a motion

for sanctions against Dr. Alan Sacerdote and other participants in two ERISA-governed retirement

plans sponsored by NYU (collectively, "Plaintiffs") and Plaintiffs' counsel. See Mot. for Sanctions,

ECF No. 163.[1] The NYU School of Medicine argues that the instant suit is duplicative of a prior

suit in this District and was initiated by Plaintiffs to circumvent unfavorable court orders in that

first suit. The NYU School of Medicine seeks sanctions pursuant to Federal Rule of Civil

Procedure 11, 28 U.S.C. § 1927, and/or the court's inherent power; or alternatively, asks for

---

[1] Unless stated otherwise, all citations to ECF contained herein are to Docket No. 17-CV-8834 ("Sacerdote II").

attorney's fees under ERISA § 502(g)(1). See Defs.' Br. at 1, Sept. 18, 2018, ECF No. 164. For the

following reasons, the NYU School of Medicine's motion for sanctions is **DENIED**.

## BACKGROUND

The instant motion was filed in Sacerdote II, the second of two actions brought by Plaintiffs

in this District alleging ERISA violations in connection with two retirement plans sponsored by

NYU. This Court refers to the two actions as Sacerdote I (No. 16-CV-06284) and Sacerdote II (No.

17-CV-8834).

### A. Sacerdote I

Plaintiffs filed their first complaint on August 9, 2016, against only New York University.

Plaintiffs alleged that NYU breached the duties of loyalty and prudence under ERISA, based on

unreasonable administrative fees, unreasonable investment management fees and performance

losses, and failure to monitor unnamed co-fiduciaries. See Compl. ¶¶ 136-53, Sacerdote I, ECF No.

1. On November 9, 2016, Plaintiffs amended their complaint to allege breaches of ERISA's duties

of loyalty and prudence, as well as its prohibited transaction rules, by: (1) locking the plans into an

imprudent investment and recordkeeping arrangement with TIAA-CREF (Counts I and II); (2)

causing the plans' participants to pay unreasonable administrative fees to TIAA-CREF and

Vanguard (Counts III and IV); and (3) causing the plans' participants to pay unreasonable

investment management, marketing, distribution, mortality, and expense risk fees, and incur

unreasonable performance losses (Counts V and VI). See Am. Compl. ¶¶ 195-233, Sacerdote I,

ECF No. 39. Plaintiffs also alleged that NYU failed to properly monitor unnamed co-fiduciaries to

the plans (Count VII). Id. at ¶¶ 234-40. As with the original complaint, NYU was the only named

defendant.

NYU moved to dismiss the amended complaint, and on August 25, 2017, the Honorable

Katherine B. Forrest granted in part and denied in part NYU's motion. The Court dismissed all

claims except those alleging certain breaches of ERISA's duties of loyalty and prudence in Counts III and V. See Opinion & Order at 37, Aug. 25, 2017, Sacerdote I, ECF No. 79. With respect to Count VII, alleging NYU's failure to properly monitor unnamed co-fiduciaries, the Court concluded that Plaintiffs' failure to name any specific co-fiduciary rendered the claim materially deficient. Id. at 34-35. However, the Court noted that Plaintiffs could file a motion for reconsideration if they possessed additional facts to support their co-fiduciary claim. Id. at 35.

While NYU's motion to dismiss had been pending, Plaintiffs learned that NYU had delegated responsibility for administering the plans to a Retirement Plan Committee (the "Committee"), consisting of nine officers of NYU and NYU Langone Medical Center. With these additional facts, Plaintiffs moved on September 8, 2017, for reconsideration of the Court's dismissal order. See Mot. for Reconsideration, Sacerdote I, ECF No. 81. That same day, Plaintiffs moved for leave to file a second amended complaint. Plaintiffs sought to add the Committee and its nine individual members as defendants, and additional facts to bolster their co-fiduciary claim. See Mot. to Amend, Sacerdote I, ECF No. 83; Pls.' Br. at 1, Sept. 8, 2017, Sacerdote I, ECF No. 84.

On October 17, 2017, the Court denied Plaintiffs' motion for leave to amend. See Order at 2, Sacerdote I, ECF No. 100. The Court concluded that Plaintiffs had not shown good cause for why they failed to amend the complaint earlier, given that NYU had disclosed the existence of the Committee and its members in November 2016. Id. at 1-2. The Court also denied Plaintiffs' subsequent motion for reconsideration for substantially the same reason. See Opinion & Order at 2-10, Oct. 19, 2017, Sacerdote I, ECF No. 101.

From April 16 to April 26, 2018, a bench trial was held before Judge Forrest. During trial, Judge Forrest raised Plaintiffs' concern that NYU might "seek to avoid liability" for the conduct of the Committee members on the grounds that "there is no liability under ERISA and/or that respondeat superior doesn't apply" to NYU and could argue, "if there [were] a judgment," that it

would not "stand as against the current named defendant," NYU. See Trial Tr. at 417-18, Sacerdote I, ECF No. 330. On the record, counsel for NYU stated that NYU would not seek to avoid liability for the actions of the Committee members. See Id. at 418. On July 31, 2018, the Court found in favor of NYU on all claims. See Opinion & Order at 3, Sacerdote I, ECF No. 348. The Court found "that while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—[P]laintiffs [had] not proven that the Committee acted imprudently or that the Plans suffered as a result." Id.

Plaintiffs then filed a motion for amended or additional findings, or to amend the judgment to include equitable relief. See Mot. to Amend, Sacerdote I, ECF No. 350. In part, Plaintiffs asked that two Committee members, Margaret Meagher and Nancy Sanchez, be removed from the Committee and be barred from serving as fiduciaries to the plans. The Court had found that Meagher "did not demonstrate the depth of knowledge one would expect from a fiduciary," and that Sanchez—Meagher's supervisor—"not only [failed] to demonstrate a satisfactory understanding of key documents and her role as a fiduciary, but she also relied on Meagher to review certain key documents." See Opinion & Order at 6 n.8, n.9, Sacerdote I, ECF No. 348. Plaintiffs reasoned that even though the Court had concluded that the Committee as a whole did not breach its duties, the Court's "findings specific to Meagher and Sanchez demonstrate[d] that both of them repeatedly failed to exercise the prudence required of a fiduciary…and that both of them [were] unfit to effectively serve on the Committee in the future." Pls.' Br. at 5, Aug. 14, 2018, Sacerdote I, ECF No. 351. NYU countered that Meagher and Sanchez were never defendants in Sacerdote I and it was thus "improper" to seek relief against them now. Defs.' Br. at 14-15, Aug. 28, 2018, Sacerdote I, ECF No. 352. The Court denied the motion. See Order, July 1, 2019, Sacerdote I, ECF No. 398.

Plaintiffs appealed to the Second Circuit. As is relevant here, on August 16, 2021, the Second Circuit vacated the district court's denial of Plaintiffs' motion for leave to amend, which had sought to add the Committee and its members as defendants. See Sacerdote v. New York Univ., 9 F.4th 95, 116-17 (2d Cir. 2021). The Second Circuit concluded that the district court had applied the wrong legal standard in denying Plaintiffs' motion for leave to amend and that the error was not harmless. Id. at 114-17.

**B.  Sacerdote II**

On November 13, 2017, the same Plaintiffs as in Sacerdote I filed a new action—Sacerdote II—alleging substantially the same claims as in Sacerdote I, including those claims the Court had dismissed in its August 25, 2017 order. See Compl. ¶¶ 222-75, ECF No. 1; Opinion & Order at 37, Sacerdote I, ECF No. 79. The Sacerdote II complaint named as defendants: NYU Langone Hospitals, NYU School of Medicine, the Retirement Plan Committee, and 21 past or present members of the Committee[2] (collectively, the "NYU Defendants"). It did not name NYU. See Compl., ECF No. 1. The Sacerdote II complaint also added a new claim and specifically identified the Committee and its members as the co-fiduciaries that NYU Langone Hospitals and NYU School of Medicine allegedly failed to monitor. Id. at ¶ 275.

The next day, on November 14, 2017, counsel for the NYU Defendants sent a letter to Plaintiffs' counsel, arguing that the complaint was "an outrageous attempt at avoiding Judge Forrest's October 17, 2017 Order denying [Plaintiffs'] motion to file a second amended complaint." Decl. of Mark Muedeking, ECF No. 165-1. Counsel asked that Plaintiffs "immediately

---

[2] The individual Committee Members named were Richard Bing, Michael Burke, Catherine Casey, Martin Dorph, Sabrina Ellis, Thomas Feuerstein, Andrew Gordon, Patricia Halley, Tim Hesler, Kathleen Jacobs, Marina Kartanos, Ann Kraus, Maurice Maertens, Margaret Meagher, Joseph Monteleone, Cynthia Nascimento, Ray Oquendo, Nancy Sanchez, Tina Surh, Chris Tang, and Linda Woodruff.

withdraw the complaint," and threatened that if Plaintiffs did not do so, counsel would ask the Court "for permission to file a motion to strike that complaint as well as a motion for sanctions in this case." Id.

On December 20, 2017, the NYU Defendants moved to dismiss the action as duplicative of Sacerdote I. See Mot. to Dismiss, ECF No. 74. Rather than responding to the motion, Plaintiffs amended the Sacerdote II complaint on January 10, 2018. See Am. Compl., ECF No. 105. The amended complaint removed NYU Langone Hospitals as a defendant. Id. For the first time, the Plaintiffs named Cammack Larhette Advisors, LLC ("Cammack") as a defendant, and alleged that Cammack was a co-fiduciary; that Cammack breached its fiduciary duties under ERISA; and that both Cammack and the NYU School of Medicine, as co-fiduciaries, were liable for the other's breaches. Id. at ¶¶ 318-48. The amended complaint also added new claims. Id. at ¶¶ 288-348.

On January 24, 2018, all defendants except Cammack responded to the amended complaint with a new motion to dismiss. See Mot. to Dismiss Am. Compl., ECF No. 117. The NYU Defendants argued that the Sacerdote II action was duplicative of Sacerdote I and was an impermissible attempt to circumvent the Court's rulings in Sacerdote I, which prohibited Plaintiffs from amending the complaint to replead the dismissed claims and add the new defendants. See Defs.' Br. at 9-13, Jan. 24, 2018, ECF No. 118. Before Cammack responded to the amended complaint, the Court dismissed the entire action against all defendants, including Cammack, as duplicative of Sacerdote I. See Opinion & Order at 2-3, Feb. 23, 2018, ECF No. 137. The Court held that the NYU Defendants in Sacerdote II were in privity with NYU in Sacerdote I, and that Sacerdote II, which alleged substantially the same claims and facts as the prior action, was duplicative of Sacerdote I. See id. at 3-8. As against Cammack, the Court held that the claims "should have been brought by joining Cammack earlier in the Sacerdote I litigation." Id. at 6-7.

On March 7, 2018, Plaintiffs moved for reconsideration of the district court's dismissal of the claims as against only Cammack. See Mot. to Alter Judgment and Mot. for Reconsideration, ECF No. 139. Plaintiffs argued they were entitled to assert the same claims against a separate, independent defendant, and that Cammack was not in privity with NYU. See Pls.' Br. at 2-4, Mar. 7, 2018, ECF No. 140. On March 22, 2018, the Court denied Plaintiffs' motion for reconsideration. See Order, ECF No. 147. On May 18, 2018, Plaintiffs appealed to the Second Circuit the district court's order dismissing the amended complaint in Sacerdote II as against Cammack only. See Notice of Appeal, ECF No. 158.

On September 18, 2018, the NYU School of Medicine filed the instant motion for sanctions against Plaintiffs, see Mot. for Sanctions, ECF No. 163, alleging that Sacerdote II was duplicative of Sacerdote I and Plaintiffs had filed Sacerdote II to avoid the district court's rulings in Sacerdote I. See Defs.' Br. at 5-6, Sept. 18, 2018, ECF No. 164. Plaintiffs responded on October 2, 2018, asserting that the two suits were not duplicative. See Pls.' Br. at 13-30, Oct. 2, 2018, ECF No. 167. While the sanctions motion remained pending, the Second Circuit ruled on Plaintiffs' appeal in Sacerdote II. On October 1, 2019, the Second Circuit vacated the district court's dismissal of the amended complaint as against Cammack, concluding that the rule against duplicative litigation did not bar Plaintiffs from filing a separate suit against Cammack "arising out of the same nucleus of facts at issue in Sacerdote I" because Cammack and NYU were not in privity. See Sacerdote v. Cammack Larhette Advisors, LLC ("Sacerdote II"), 939 F.3d 498, 510 (2d Cir. 2019).

## LEGAL STANDARD

### A. The Rule Against Duplicative Litigations

As part of a district court's general power to administer its docket, a court "may stay or dismiss a suit that is duplicative of another federal court suit." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S.

800, 817 (1976)). It is well settled that a plaintiff has "no right to maintain two actions on the same

subject in the same court, against the same defendant at the same time." Curtis, 226 F.3d at 139.

But, for the rule against duplicative litigations to apply, "the case must be the same." Sacerdote II,

939 F.3d at 504. For two cases to be the same, "[t]here must be the same parties, or at least, such as

represent the same interests; there must be the same rights asserted and the same relief prayed for;

the relief must be founded upon the same facts, and the title, or essential basis of the relief sought

must be the same." Id. (citing The Haytian Republic, 154 U.S. 118, 124 (1894)); see also Curtis,

226 F.3d at 138. As the Second Circuit has explained, courts "generally do not apply the rule

against duplicative litigation when the defendants in two similar actions are different." Sacerdote

II, 939 F.3d at 505. This is because a plaintiff has "as many causes of action as there are defendants

to pursue." N. Assur. Co. of Am. v. Square D Co., 201 F.3d 84, 88-89 (2d Cir. 2000).

      "The rule against duplicative litigation is distinct from but related to the doctrine of claim

preclusion or *res judicata*." Curtis, 226 F.3d at 138; see also Foster v. UPS Freight, Inc., No. 18-

CV-10294 (NSR)(LMS), 2020 WL 535046, at *5 (S.D.N.Y. Sept. 4, 2020), report and

recommendation adopted, 2022 WL 370070 (S.D.N.Y. Feb. 8, 2022), and report and

recommendation adopted, 2022 WL 656778 (S.D.N.Y. Mar. 4, 2022). Claim preclusion "bars

claims that were brought and decided in a prior litigation," as well as bars "all other claims relating

to the same transaction against the same defendant that could have been brought at that time." N.

Assur. Co. of Am., 201 F.3d at 87. Claim preclusion thus applies to bar a second suit, when a

plaintiff has sought to "add additional claims against the *same* defendant" in the first suit, leave to

amend was denied without reaching the merits, and the plaintiff subsequently brings a second

action to assert those claims against the same defendant as in the first suit. Id. at 87-88 (collecting

cases) (emphasis in original). In those cases, when courts apply claim preclusion to bar the second

suit, "it is not the actual decision to deny leave to amend that forms the basis of the bar," but rather,

the bar is based on the rule that a "plaintiff must bring all claims at once against the same defendant relating to the same transaction or event." Id. at 88.

By contrast, a plaintiff seeking to add claims against a *new* defendant is not required to assert those claims in the same suit. Id. at 88-89; see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367 (2d Cir. 1995) ("When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties"). Instead, a plaintiff has "as many causes of action as there are defendants to pursue." N. Assur. Co. of Am., 201 F.3d at 89. Where leave to amend is denied and a plaintiff brings a second suit against an independent defendant, the plaintiff "should not be penalized for its failure to succeed in its attempt to have all the claims resolved in one lawsuit." Id. Moreover, where leave to amend is denied on procedural grounds only—such as when a court concludes that the motion to amend is untimely—the court's ruling denying leave to amend does not bar a plaintiff from asserting those claims in a separate suit against an independent defendant. Id. at 90.

### B. Rule 11 Sanctions

Under Federal Rule of Civil Procedure 11, when a signed pleading, written motion, or other paper is submitted to the court, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after a inquiry reasonable under the circumstances": (1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase in the cost of litigation;" (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument" for the extension, modification or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support "after a reasonable opportunity for further investigation or discovery;" and (4) "the denials

of factual contentions are warranted on the evidence or, if specifically so identified," are reasonable based on a lack of information or belief. Fed. R. Civ. P. 11(b).

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Ferguson v. Comm'r of Tax & Fin., 739 F. App'x 19, 21-22 (2d Cir. 2018) (summary order). "When considering whether to impose monetary sanctions based on meritless pleadings, the operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." Id. at 22. "Rule 11 does not . . . authorize sanctions for merely frustrating conduct. It authorizes sanctions only for the filing of a document with the court that fails to satisfy the rule's certification requirements." Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 158 (2d Cir. 2010).

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000), and is "not based on the subjective beliefs of the person making the statement," Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012); see also In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig., 712 F.Supp.2d 255, 265-66 (S.D.N.Y. 2010). Thus, an attorney files a pleading or motion in violation of Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." Wechsler v. Hunt Health Sys., Ltd., 216 F.Supp.2d 347, 356 (S.D.N.Y. 2002); see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F.3d 157, 167 (2d Cir. 1999). To grant a motion for sanctions, the Court must conclude that it is "patently clear that a claim has absolutely no chance of success" or that the factual claims are "utterly lacking in support." E. Gluck Corp. v. Rothenhaus, 252 F.R.D.

10

175, 179 (S.D.N.Y. 2008). See also Storey v. Cello Hldgs., L.L.C., 347 F.3d 370, 388 (2d Cir. 2003); Rubenstein v. Live Nation Entertainment, 272 F.Supp.3d 544, 546 (S.D.N.Y. 2017). "[A]ll doubts should be resolved in favor of the signing attorney." K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co., 61 F.3d 123, 131 (2d Cir. 1995).

Whether to award sanctions pursuant to Rule 11 is subject to the Court's discretion. Sorenson v. Wolfson, 683 F. App'x. 33, 35 (2d Cir. 2017) (summary order). "Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." E. Gluck Corp., 252 F.R.D. at 179. Even though "the imposition of sanctions is within the province of the district court, 'any such decision [should be] made with restraint and discretion.'" Pannonia Farms, Inc. v. USA Cable, 426 F.3d 650, 652 (2d Cir. 2005) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)). "Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." Pannonia Farms, 426 F.3d at 652.

Given that the aim of Rule 11 is to minimize expenditure of judicial resources and encourage correction or withdrawal of defective documents, see Lawrence, 620 F.3d at 158; see also Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 141 (2d Cir. 2002), the Rule contains a safe-harbor provision requiring the moving party to first provide notice and a draft of the motion for sanctions to the non-moving party and provide them 21 days to cure. Fed. R. Civ. P. 11(c)(2). Under Rule 11(c), "[t]he motion . . . must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service" of a notice of motion. Id. As the Second Circuit has made clear, "Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being

11

considered.'" Star Mark Mgmt., 682 F.3d at 175 (quoting Schlaifer, 194 F.3d at 334); see also

Fierro v. Gallucci, 423 F. App'x 17, 18-19 (2d Cir. 2011) (summary order) (holding that the district

court was "required to deny plaintiffs' motion for sanctions for failure to comply with the 21-day"

safe-harbor provision). The notice requirement in Rule 11(c) is not satisfied with "[a]n informal

warning in the form a letter without service of a separate Rule 11 motion." Star Mark Mgmt., 682

F.3d at 175; see also Chong v. Kwo Shin Chang, 599 F. App'x 18, 19 (2d Cir. 2015) (summary

order) (concluding that informal e-mail "without service of a separate Rule 11 motion" was

insufficient to satisfy Rule 11(c)); SFM Realty Corp. v. Lemanski, 20-CV-209 (KPF), 2021 WL

21987, at *5 (S.D.N.Y. Jan. 4, 2021) (concluding that a letter indicating "intent to file" motion for

sanctions was insufficient to satisfy Rule 11(c)); Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC,

419 F.Supp.3d 490, 522 (E.D.N.Y. 2019) (concluding that a letter, unaccompanied by the notice of

motion or any other document was insufficient to satisfy Rule 11(c)).

### C.  Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Courts also have the inherent authority to "to fashion an appropriate sanction for conduct which

abuses the judicial process." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017);

see also Elsevier Inc. v. Grossmann, No. 12-CV-5121 (KPF), 2017 WL 3393848, at *3 (S.D.N.Y.

Aug. 7, 2017). In order to impose sanctions under Section 1927 or the court's inherent authority,

the court "must find clear evidence that (1) the offending party's claims were entirely meritless and

(2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d

Cir. 2000); accord Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016)

(explaining that sanctions under Section 1927 are proper only when an attorney's actions are "so

completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay") (internal quotation marks and citation omitted). Courts can sanction a party under either authority that "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); see also Revson, 221 F.3d at 79 ("bad faith is the touchstone of an award" under Section 1927).

The decision to issue sanctions under either Section 1927 or the court's inherent power lies within the Court's broad discretion. See United States v. Prevezon Holdings, Ltd., 305 F.Supp.3d 468, 478 (S.D.N.Y. 2018) (citing Sorenson v. Wolfson, 170 F.Supp.3d 622, 634 (S.D.N.Y. 2016)). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Xiao Xing Ni v. Gonzales, 494 F.3d 260, 270 (2d Cir. 2007) (quoting Chambers, 501 U.S. at 44). The only "meaningful difference" between Section 1927 and a court's inherent power is that "awards under [Section] 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). As compared to Rule 11 sanctions, sanctions under Section 1927 or the court's inherent power require "clear evidence" and a "high degree of specificity" of bad faith. Id. at 1272.

### D. Attorney's Fees under ERISA § 502(g)(1)

ERISA § 502(g)(1) provides that a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C 1132(g)(1). To be entitled to an award of attorney's fees under Section 502(g)(1), a party must have achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010). That standard requires more than just a "trivial success" or "purely procedural victory." Fisher v. Aetna Life Insurance Co., No. 16-CV-144 (RJS), 2020 WL 5898788 at *6 (S.D.N.Y. Oct. 5, 2020), aff'd 32 F.4th 124 (2d Cir. 2022). "After Hardt, whether a plaintiff has obtained some degree of success on

13

the merits is the sole factor that a court *must* consider in exercising its discretion" to award attorney's fees and costs under Section 502(g)(1). <u>Donachie v. Liberty Life Assurance Co. of Boston</u>, 745 F.3d 41, 46 (2d Cir. 2014) (emphasis in original). Nevertheless, courts in this Circuit also look to five factors (the "<u>Chambless</u> factors") to help "channel[ ] their discretion" in deciding whether to award fees and costs. <u>Fisher</u>, 2020 WL 5898788, at *7. The <u>Chambless</u> factors are: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 815 F.2d 869, 871 (2d Cir. 1987), <u>abrogated in part by</u> <u>Hardt</u>, 560 U.S. 242 (2010).

A party does not need to show bad faith to recover attorney's fees and costs. <u>Stolarz v. Rosen</u>, 03-CV-3083 (DF), 2009 WL 691206, at *1 (S.D.N.Y. Mar. 11, 2009). Instead, a party only needs to demonstrate that "the offending party was culpable or at fault in causing the underlying dispute." <u>Id.</u> (internal quotation marks and citation omitted).

Lastly, "[a]lthough the <u>Chambless</u> test applies to both plaintiffs and defendants in ERISA actions, courts have cautioned that the five factors 'very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs.'" <u>Salovaara v. Eckert</u>, 222 F.3d 19, 28 (2d Cir. 2000) (quoting <u>West v. Greyhound Corp.</u>, 813 F.2d 951, 956 (9th Cir. 1987)). "The central purpose of ERISA is to protect beneficiaries of employee benefit plans." <u>Slupinski v. First Unum Life Ins. Co.</u>, 554 F.3d 38, 47 (2d Cir. 2009). As such, courts view "culpability very narrowly" when reviewing fee requests from ERISA defendants. <u>Royal v. Retirement Board of Bert Bell/Pete Rozelle NFL Player Retirement Plan</u>, 19-CV-5164 (AJN), 2020 WL 6820750, at *3 (S.D.N.Y.

Nov. 20, 2020) (internal quotation marks and citation omitted), aff'd No. 20-4184, 2021 WL

4484925 (2d Cir. Oct. 1. 2021).

## DISCUSSION

The NYU School of Medicine brought the instant motion for sanctions under Rule 11,

Section 1927, and the court's inherent power, or in the alternative for attorney's fees and costs

pursuant to Section 502(g)(1) of ERISA. See Mot. for Sanctions, ECF No. 163. Defendant,

however, has failed to satisfy the procedural requirements of the safe-harbor provision in Rule

11(c) for filing a motion for sanctions.  Regardless, even if the NYU School of Medicine had

satisfied this procedural requirement, Defendant's argument for sanctions fails on the merits

because it was not objectively unreasonable for Plaintiffs to have filed a separate suit against the

NYU Defendants in Sacerdote II. Moreover, because Plaintiffs did not act in bad faith, the NYU

School of Medicine also has not shown an entitlement to sanctions under Section 1927 or the

court's inherent power, or to an award of attorney's fees under ERISA Section 502(g)(1).

### A.  **The NYU School of Medicine is not entitled to Rule 11 sanctions.**

As an initial matter, the NYU School of Medicine did not adequately notify Plaintiffs, as

required under Rule 11(c), of the basis for seeking sanctions prior to filing the instant motion. On

November 14, 2017, the NYU Defendants sent Plaintiffs a letter. See Decl. of Mark Muedeking,

ECF No. 165-1. In that letter, defense counsel stated that he had obtained a copy of the complaint

in Sacerdote II, that he was "very surprised to find that it alleged facts and claims that were largely

identical to those set out" in Sacerdote I, and that the new complaint was "an outrageous attempt at

avoiding" the Court's prior orders in Sacerdote I. Id. Counsel asked Plaintiffs to "immediately

withdraw the complaint" and warned Plaintiffs that if they failed to do so, counsel would "ask for

permission to file a motion to strike that complaint as well as a motion for sanctions." Id.

Defendants did not attach a copy of their sanctions motion, nor did they include a notice of motion

outlining the grounds for seeking Rule 11 sanctions against Plaintiffs. Moreover, the letter did not set forth, with any particularity or specificity, the grounds upon which the NYU Defendants believed that the suit in Sacerdote II was duplicative of Sacerdote I, and thus barred by the rule against duplicative ligation or the doctrine of claim preclusion.

The safe-harbor provision is a "strict procedural requirement," and "[a]n informal warning in the form of a letter," without an explanation of the particular grounds for seeking sanctions, as the Defendant relies on here, is insufficient to satisfy the notice requirement in Rule 11(c). Star Mark Mgmt., 682 F.3d at 175. To be sure, a letter, without service of a separate memorandum of law, may be sufficient to satisfy Rule 11(c). But in circumstances where a court has found a letter sufficient, the letter has detailed the particular grounds for seeking sanctions, either in a notice of motion or the letter itself, and the subsequent sanctions motions raised "substantially" the same grounds as those raised in the letter. Star Mark Mgmt., 682 F.3d at 176-77; see also Montanez v. D & D Auto, LLC, No. 15-CV-397 (VAB), 2016 WL 1254199, at *18 (D. Conn. Mar. 29, 2016) ("detailed" letter provided sufficient notice, even though "informal," because it set forth the "factual and legal bases" for a sanctions motion and "unequivocally indicate[d]" that the movant would file sanctions); Jeffreys v. Rossi, 275 F.Supp.2d 463, 480 n.27 (S.D.N.Y. 2003) (letter was sufficient to satisfy notice requirement where movant served a "detailed letter outlining their anticipated motion and attach[ed] evidentiary support," which specifically mentioned Rule 11 and the 21-day safe-harbor provision), aff'd 426 F.3d 549 (2d Cir. 2005). The letters in those cases thus served to give the allegedly offending party an "opportunity to determine whether there was a non-frivolous basis for the pleading." Star Mark Mgmt., 682 F.3d at 177.

Here, by contrast, the NYU Defendants' letter did not even mention Rule 11. Nor did the letter adequately explain the reasons, with factual and legal support, for why the NYU Defendants believed that Plaintiffs had violated Rule 11 by filing Sacerdote II. Instead, the letter contained a

16

conclusory assertion that Sacerdote II raised claims that were "largely identical" to the claims in Sacerdote I and thus was "an outrageous attempt at avoiding" Judge Forrest's prior orders in Sacerdote I. Decl. of Mark Muedeking, ECF No. 165-1. But the letter provided no legal analysis or support for that assertion.

As the NYU School of Medicine acknowledges in its brief, a letter may satisfy the safe-harbor provision where it "sets forth in detail the factual and legal bases for a motion for sanctions." Defs.' Br. at 5, ECF No. 156. But no such analysis was included in the NYU Defendants' one-page letter. For instance, Sacerdote II named NYU Langone Hospital, NYU School of Medicine, the Retirement Committee and the individual Committee members as defendants. NYU Langone Hospital and NYU School of Medicine were not named as defendants in Sacerdote I, nor were they the subject of any of Judge Forrest's prior orders. The NYU Defendants' letter did not explain why asserting claims as against those two entities in a separate lawsuit was improper. See N. Assur. Co. of Am., 201 F.3d at 88-89. Similarly, the individual Committee members are independent defendants from NYU, and although Judge Forrest denied Plaintiffs an opportunity to amend the complaint in Sacerdote I on procedural grounds—because the motion to amend was untimely, see Order, Sacerdote I, ECF No. 100—the letter did not address why Plaintiffs were not permitted to commence a separate action naming those Committee members. See N. Assur. Co. of Am., 201 F.3d at 89-90 (explaining that where leave to amend is denied because the motion is untimely, a court's ruling denying leave does not bar a plaintiff from asserting those claims in a separate suit against an independent defendant). In short, the brief one-page letter, devoid of any factual or legal support for the grounds upon which an award of sanctions is warranted under Rule 11, does not satisfy Rule 11(c)'s notice requirement.

Moreover, even assuming that the November 14, 2017 letter was sufficiently specific to provide adequate notice, the letter fails to satisfy the safe-harbor requirement for yet another

reason: it was sent following the filing of the initial complaint in Sacerdote II, and counsel for the NYU School of Medicine did not send a new notice of their intent to seek sanctions after Plaintiffs filed the amended complaint on January 10, 2018. "[B]ecause Rule 11 is aimed at addressing particular defective or frivolous *documents*, a Rule 11 motion aimed at an initial complaint must be re-noticed upon the filing of an amended complaint." Cohen v. Equifax Information Services, LLC, 18-CV-6210 (JSR) (KHP), 2021 WL 4393129, at *4 (S.D.N.Y. Feb. 24, 2021) (emphasis in original), report and recommendation adopted, 2021 WL 4392296 (S.D.N.Y. Sept. 24, 2021); see also Lawrence, 620 F.3d at 158 (concluding that new notice of defect in filing was required after filing of amended complaint). The NYU Defendants were thus required to provide a new notice to Plaintiffs of the defects in the amended complaint. Because the November 14th letter was ineffective in satisfying the safe-harbor requirements once Plaintiffs filed the amended complaint, the NYU School of Medicine is not entitled to sanctions under Rule 11 for that reason as well.

Regardless, even if the NYU Defendants had provided adequate notice under Rule 11, the motion would fail because Plaintiffs' conduct was not objectively unreasonable or otherwise sanctionable under Rule 11. In support of its motion for sanctions, the NYU School of Medicine argues that Sacerdote II is duplicative of Sacerdote I, and thus it was an attempt to get around unfavorable decisions by Judge Forrest in Sacerdote I. See Defs.' Br. at 7-8, ECF No. 164. The Court will address Plaintiffs' conduct in relation to three groups of defendants: the Retirement Committee and individual committee members; the NYU School of Medicine; and Cammack.

The NYU School of Medicine contends that Sacerdote II is duplicative of Sacerdote I. Defs.' Br. at 8-9, ECF No. 164. For the rule against duplicative litigations to apply, the two actions must be against the same defendant, "or, at least, such as represent the same interests." Sacerdote II, 939 F.3d at 504; see also Curtis, 226 F.3d at 139. Put another way, a second suit is not duplicative where that suit names a different defendant and the defendant is not in privity with a

defendant in the prior suit. Sacerdote II, 939 F.3d at 509-10. No one contends that the Committee or its individual members are the same defendant as NYU, who was the only named defendant in Sacerdote I. As such, the question is whether Plaintiffs had an objectively reasonable basis for believing that the Committee, its members, and NYU might not be in privity for purposes of liability for a breach of fiduciary duty under ERISA. Here, Plaintiffs' belief that privity might not exist was objectively reasonable.[3]

In that regard, Plaintiffs' counsel could have reasonably believed that pursuing a separate action against the Committee and its members was necessary for several related reasons: evidence in Sacerdote I suggested that NYU had delegated its day-to-day responsibility to the Committee, see Pls.' Br. at 4, ECF No. 167; ERISA provides that a named fiduciary is not liable for a breach by its delegee when a delegation occurs, see 29 U.S.C. § 1105(c); case law supports an argument that employers under similar circumstances are not subject to fiduciary liability under a theory of respondeat superior, see, e.g., In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig., 756 F.Supp.2d 330, 346-348 (S.D.N.Y. 2010); and NYU had "refused" to stipulate to liability for the conduct of the Committee and its members and thus could have potentially sought to avoid liability for any breach of fiduciary duty by individual committee members, see Pls.' Br. at 2, ECF No. 167. Moreover, if the individual committee members were

---

[3] In arguing that sanctions are warranted, the NYU School of Medicine relies on the finding by Judge Forrest that Sacerdote II was duplicative of Sacerdote I. See Defs.' Br. at 8, ECF No. 164. But Plaintiffs were not required to succeed on their argument that Sacerdote II was not duplicative; to avoid sanctions under Rule 11, all Plaintiffs needed was a colorable basis for believing that Sacerdote II might not be duplicative. Tracey Tooker & TT Ltd., Inc. v. Whitworth, 212 F.Supp.3d 429, 436 (S.D.N.Y. 2016) (concluding sanctions were unwarranted where the arguments were "meritless, but not frivolous"); see also Scientific Components Corp. v. Sirenza Microdevices, Inc., No. 03-CV-1851 (NGG), 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); see also Eisenberg v. Yes Clothing Co., No. 90-CV-8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak").

not named as defendants, Plaintiffs could not obtain equitable relief as against them—an argument NYU raised in <u>Sacerdote I</u>. <u>See</u> Defs.' Br. at 10-11, <u>Sacerdote I</u>, ECF No 352. In short, it was not "patently clear" that NYU and the Committee members were in privity, <u>Jeffreys</u>, 275 F.Supp.2d at 479, such that filing a separate suit naming the Committee members would be duplicative of <u>Sacerdote I</u>. Put differently, Plaintiffs had an objectively reasonable basis for believing that commencing a separate suit against the Committee and its individual members might be permissible.[4]

Nor does the fact that Plaintiffs named the NYU School of Medicine and NYU Langone Hospitals as defendants in <u>Sacerdote II</u> amount to sanctionable conduct. NYU Langone Hospitals and NYU School of Medicine were not defendants in <u>Sacerdote I</u> and nor were they named by Plaintiffs in the proposed second amended complaint for which leave to amend was denied. <u>See</u> Proposed Second Am. Compl., <u>Sacerdote I</u>, ECF No. 84-2. Moreover, shortly after the NYU Defendants moved to dismiss the complaint in <u>Sacerdote II</u>, <u>see</u> Mot. to Dismiss, ECF No. 74, Plaintiffs amended the complaint to remove NYU Langone Hospitals as a defendant. <u>See</u> Am. Compl., ECF No. 105. Additionally, as to the NYU School of Medicine, Plaintiffs also had a colorable basis for concluding that the interests of NYU and the NYU School of Medicine might diverge such that a separate action naming the NYU School of Medicine is not duplicative. <u>See</u> Pls.' Br. at 12-13, ECF No. 133.

---

[4] The NYU School of Medicine contends that Plaintiffs' appropriate remedy was to appeal the denial by Judge Forrest of the motion to amend the complaint, which sought to add the Committee members as defendants in <u>Sacerdote I</u>. <u>See</u> Defs.' Ltr. at 1-2, Aug. 26, 2021, ECF No. 206. That would be true if the individual Committee members and NYU were the same defendant, because under such circumstances, a plaintiff must bring all claims at once "against the same defendant relating to the same transaction or event." <u>See</u> <u>N. Assur. Co. of Am.</u>, 201 F.3d at 88. But, as already discussed, where the defendants in the separate actions are not in privity, the denial of the motion to amend does not bar a separate action raising the same claims. <u>See</u> <u>supra</u> pp. 7-9. And, here, Plaintiffs had an objectively reasonable basis for believing that privity did not exist between NYU, the Committee, and its members.

Finally, with respect to Cammack, whether Plaintiffs' conduct was "frivolous and vexatious," Defs.' Br. at 2, ECF No. 164, also turns on whether Sacerdote II was duplicative of Sacerdote I—a question the Second Circuit has answered. As the Second Circuit concluded in Sacerdote II, Cammack and NYU are "different parties" who are not in privity with one another. Sacerdote II, 939 F.3d at 507, 510. The Court thus held that that the District Court's "dismissal of Cammack from Sacerdote II pursuant to the rule against duplicative litigation was legal error . . . and a violation of the fundamental principle that a plaintiff has as many causes of action as there are defendants to pursue." Id. at 510 (internal quotation marks and citation omitted). Because Cammack and the defendants in Sacerdote I are independent and distinct entities, Plaintiffs had the right to bring a separate action against Cammack, even if the claims against Cammack arose from the same nucleus of facts as in Sacerdote I, and even after Judge Forrest denied leave to amend in Sacerdote I. Order, Sacerdote I, ECF No. 100. Nothing required Plaintiffs to include Cammack in its suit in Sacerdote I. See N. Assur. Co. of Am., 201 F.3d at 88-89. Plaintiffs thus also had an objectively reasonable basis for commencing Sacerdote II specifically as against Cammack.

**B. The NYU School of Medicine has not shown that sanctions under Section 1927 and the court's inherent power are merited, or that an award of attorney's fees under ERISA § 502(g)(1) is appropriate.**

The NYU School of Medicine also seeks sanctions under Section 1927 and the court's inherent power. To impose sanctions under either Section 1927 or the court's inherent power, there must be "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson, 221 F.3d at 79. Claims are defensible when they have "some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Id. at 78-79. A finding of bad faith is necessary for the award of sanctions under Section 1927 and the court's inherent power. See Rates Tech. Inc. v. Broadvox Holding Co.,

LLC, 56 F.Supp.3d 515, 526-27 (S.D.N.Y. 2014) (providing that a finding of bad faith requires that actions be so meritless that they must have been undertaken for some improper purpose).

The NYU School of Medicine also seeks an award of attorney's fees under Section 502(g)(1) of ERISA. As is relevant to the Court's analysis here, the first Chambless factor looks at "the degree of the offending party's culpability or bad faith," and the third factor examines "whether an award of fees would deter other persons from acting similarly under like circumstances." Chambless, 815 F.2d at 871; see also Fisher, 2020 WL 5898788, at *7 (explaining that bad faith is relevant to the analysis under the first Chambless factor). Where "an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third Chambless factor . . . weighs strongly *against* granting fees" because an award "would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees," thereby undermining "ERISA's essential remedial purpose of protecting beneficiaries of pension plans." Salovaara, 222 F.3d at 31 (emphasis in original). Bad faith is also relevant to the analysis under the first Chambless factor for an award of attorney's fees under Section 502(g)(1) of ERISA. See Chambless, 815 F.2d at 871.

As already discussed, Plaintiffs' claims were not entirely without legal support, because Plaintiffs had an objectively reasonable basis for concluding that Sacerdote II was not duplicative of Sacerdote I. The NYU School of Medicine has thus not shown that Plaintiffs acted in bad faith in commencing Sacerdote II such as to warrant sanctions under Section 1927 or the court's inherent power, or an award of attorney's fees under ERISA § 502(g)(1). Moreover, because Plaintiffs had a colorable basis for commencing Sacerdote II, the third Chambless factor weighs strongly against an award of attorney's fees under ERISA § 502(g)(1). Salovaara, 222 F.3d at 31.

In sum, the Court declines to grant attorney's fees and costs to the NYU School of Medicine under ERISA § 502(g)(1), and also declines to grant sanctions under Section 1927 and/or the Court's inherent authority.

## **CONCLUSION**

For the reasons stated above, the NYU School of Medicine's motion for sanctions is **DENIED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 163.

DATED:      June 8, 2022
            New York, New York


Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge

cc: All Counsel of Record (via ECF)