

Nixon Peabody LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111

**Charles M. Dyke**
Partner, ERISA Litigation Practice Leader

Attorneys at Law
nixonpeabody.com
@NixonPeabodyLLP

T / 415.984.8315
F / 844.540.4098
cdyke@nixonpeabody.com

February 8, 2024

*Via ECF*

Hon. Valerie Figueredo
United States District Court for the
  Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

> **MEMO ENDORSED**
>
> HON. VALERIE FIGUEREDO
> UNITED STATES MAGISTRATE JUDGE
> DATED: 2/9/2024
>
> Plaintiffs are directed to provide a response to the issues addressed herein by no later than 5:00 p.m. on Wednesday, February 14, 2024.

Re:     *Sacerdote v. Cammack LaRhette Advisors, LLC.*, No. 1:17-cv-8834-AT-VF (S.D.N.Y.)

Dear Magistrate Judge Figueredo:

I write on behalf of Cammack LaRhette Advisors, LLC ("Cammack") to request a pre-motion discovery conference in accordance with § II.c. of this Court's Individual Practices and Local Civil Rule 37.2.

On February 6, 2024, my office was served with the attached Fed. R. Civ. P. 30(b)(6) Notice of Deposition of Cammack seeking testimony on eight topics aimed at discovering Cammack's net worth and finances, as well as the terms of a corporate transaction ("Deposition Notice") (See Exh. A). It was unilaterally noticed for February 16, 2024, the day that discovery in this matter closes. (Dkt. 269 ¶¶ 5-6.)

On February 7, 2024, I emailed Joel Rohlf and Michael Wolff, counsel for Plaintiffs, objecting to the Notice on the ground that it was untimely and unreasonable under the circumstances, and indicating that in any event Cammack and its counsel are unavailable on February 16, 2024. Mr. Rohlf responded that Plaintiffs' counsel were informed "for the first time" on February 5, 2024, that Cammack "may have insufficient funds to satisfy a possible judgment against it." He also stated that the Deposition Notice "seeks information that Cammack is required to keep as part of its records by Massachusetts law and should be readily available."

On February 8, 2024, at 11:30 a.m. (PST), counsel for the parties conducted a telephonic meet-and-confer that lasted approximately 30 minutes. The conference was attended by the undersigned and Dawn Valentine for Cammack, and by Messrs. Rohlf and Wolff for Plaintiffs.

Since neither I nor anyone at Cammack had ever said to counsel for Plaintiffs that Cammack may have insufficient assets to satisfy a possible judgment against it, and since a focus of Plaintiffs' Notice appeared to relate to a publicized transaction in January 2021 in which CAPTRUST acquired the assets of Cammack Retirement Group (*i.e.*, Topic 5 in the Notice of Deposition, *see* Ex. A), which had recently been mentioned, I began the call by asking counsel if they were taking the position that they had been

4893-1176-1059.2

Hon. Valerie Figueredo
February 8, 2024
Page 2

unaware of the January 2021 transaction prior to February 5. (A copy of CAPTRUST's press release concerning the transaction is attached as Exhibit B.) Mr. Rohlf responded that Plaintiffs were not taking that position and in fact had been aware of the January 2021 transaction long before February 5. I then noted that Cammack and its counsel had never told Plaintiffs' counsel that Cammack may have insufficient assets to satisfy a possible judgment, and Mr. Rohlf agreed that was the case. I then asked Mr. Rohlf to let us know what "possible judgment" he was referring to. He was unable to answer. So I indicated that if Plaintiffs in this case were able to obtain a judgment for the same $358 million (or more) in damages on their claims against Cammack that they had asserted on the identical claims they tried and lost against NYU in *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) (*Sacerdote I*), then Cammack would stipulate that it would not be able to satisfy such a judgment. Otherwise, Cammack long ago produced in discovery copies of its insurance coverage, and there is no basis for believing that Cammack could not meet its obligations under the law to satisfy a judgment, if Plaintiffs could obtain one. Meanwhile, Plaintiffs' counsel have long known about the publicized transaction with CAPTRUST, and if Plaintiffs had had any concerns, they should have initiated discovery long ago. Mr. Rohlf responded by re-asserting that Plaintiffs first heard (from someone other than Cammack) on February 5 that Cammack "may have insufficient assets to satisfy a possible judgment," and the information sought should be readily available.

Mr. Wolff asked what prejudice Cammack would suffer from having to sit for a new deposition, and I responded that two depositions in this case already are set for February 13 and 15, 2024, and neither Cammack nor counsel is available to sit on February 16 or to prepare for such a deposition. Mr. Wolff indicated his belief that the topics were simple and easy for a witness to testify on, and I disagreed, walking him through the topics and explaining the burden. Mr. Wolff said he was unpersuaded.

Mr. Wolff indicated that Plaintiffs should be allowed to discover whether funds had been "siphoned off" from Cammack "to avoid paying a judgment." I asked him the evidentiary basis for any such belief, and he responded with a circular argument: Cammack's unwillingness to agree to sit for the noticed deposition constituted such evidence. Finally, Ms. Valentine indicated that this inquiry, if it were proper, should have been conducted via written discovery rather than depositions. Mr. Wolff disagreed. I then noted the parties' impasse and indicated that Cammack would be filing this letter with the Court.

For the reasons set forth below, Cammack requests a pre-motion discovery conference and an order taking the deposition of Cammack off-calendar, at least until after the discovery conference is completed and any needed motion for protective order is heard and decided.

**Plaintiffs Failed to Provide Cammack Reasonable Notice**

Plaintiffs have failed to provide Cammack with reasonable notice. The Deposition Notice seeks to conduct a 30(b)(6) deposition on the last day of discovery on matters that could have been explored in 2022 or 2023, with only eight business-days' notice. Notice must be reasonable under the circumstances. *Davidson v. Dean*, 204 F.R.D. 251, 256 (S.D.N.Y. 2001). Courts have "generally determined that 14 days is presumptively reasonable." *JB Aviation LLC v. R. Aviation Charter Servs., LLC,* 2016 Dist. LEXIS 112703, *8 (E.D.N.Y. 2016). *See also Brown v. Hendler*, 2011 U.S. Dist. LEXIS 9476, *5

Hon. Valerie Figueredo
February 8, 2024
Page 3

(S.D.N.Y. 2011) ("Although Rule 45 does not define 'reasonable time,' many courts have found 14 days from the date of service as presumptively reasonable."). Plaintiffs' Notice of Deposition falls far short of the 14-day standard.

A Rule 30(b)(6) deposition notice requires that a party must produce witnesses, "but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *SEC v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992). Demanding that a party identify and adequately prepare 30(b)(6) witnesses on eight business days' notice is unreasonable and unrealistic. *See Holloway v. 3M Co.,* 2019 U.S. Dist. LEXIS 222001, *74 (C.D. Cal. 2019) (holding that nine days' notice for a person most knowledgeable deposition is not reasonable and granting protective order); *Kilby v. CVS Pharm., Inc.*, 2017 U.S. Dist. LEXIS 63502, *2-3 (S.D.Cal. 2017) (Rule 30(b)(6) notice served 10 calendar days before deposition failed to provide defendant with reasonable notice). *See also Coury v. Air & Liquid Sys. Corp.*, 2019 U.S. Dist. LEXIS 247134, *13 (D. Or. 2019) (requesting a deposition within twenty days of the end of discovery in a case pending for 3 years is not reasonable); *Kilby v. CVS Pharm., Inc.*, 2017 U.S. Dist. LEXIS 63502, *2-3 (S.D. Cal. 2017) (holding that 30(b)(6) notice served just ten calendar days before the deadline for completing class-related discovery was unreasonable).

**The Deposition as Noticed Would Amount to an Impermissible "Memory Quiz"**

It is well-settled that a Rule 30(b)(6) deposition is not a "memory contest" of topics better suited to written responses or document production. *Blackrock Allocation Target Shares*, 2017 U.S. Dist. LEXIS 133373, *2 (S.D.N.Y. Apr. 27, 2017) *See also Molgora v. Sharinn & Lipshie, P.C.,* 2018 U.S. Dist. LEXIS 19838, *2 (S.D.N.Y. Feb. 6, 2018); *Dealer Comput. Servs., Inc. v. Curry*, 2013 U.S. Dist. LEXIS 18315, 2013 WL 499520, at *4 (S.D.N.Y. Feb. 7, 2013).

The testimony topics here would require the deponent to engage in a memory test. For instance, the witness is asked to "identify all assets and liabilities and the form, amount, and location of [Cammack's] assets" and to identify bank account numbers, broker account numbers, note amounts and debtors. The witness is also to identify the terms of the purchase agreement, the amount of the sale and disposition of sale proceeds. If these requests were appropriate at all, they should have been pursued as document requests or under written discovery. But written discovery has closed, and Cammack should not be required to produce a last-minute witness for memory-test testimony explicitly disallowed by this Court.

Cammack respectfully seeks an informal discovery conference and an order that the deposition noticed for February 16, 2024 be held in abeyance while this Court addresses this dispute.

      Respectfully submitted,

      *Charles M. Dyke*

      Charles M. Dyke

4893-1176-1059.2

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. ALAN SACERDOTE, et al.,<br><br>            *Plaintiffs*,<br>v.<br><br>CAMMACK LARHETTE ADVISORS, LLC, et al.,<br><br>            *Defendant*. | No. 1:17-cv-08834-AT-VF |

## NOTICE OF DEPOSITION OF CAMMACK LARHETTE ADVISORS, LLC

PLEASE TAKE NOTICE that, under Federal Rule of Civil Procedure 30(b)(6), Plaintiffs will take the deposition of Cammack LaRhette Advisors, LLC, on February 16, 2024 at 10:00 a.m. Eastern Time. The deposition will be conducted remotely using the video communication platform Zoom, and the witness will appear through a computer equipped with an appropriate internet connection, the Zoom application, and the capability for audio-visual communication. Jane Rose Court Reporting shall create a Zoom invitation link that will be circulated to counsel and the deponent in advance of the deposition.

The deposition shall be recorded by stenographic means and video via www.zoom.com and will proceed pursuant to Rule 30 of the Federal Rules of Civil Procedure before a notary public or other officer duly authorized by law to administer oaths and will continue until completed as provided by the Federal Rules of Civil Procedure.

In accordance with Rule 30(b)(6), Cammack LaRhette Advisors, LLC shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf and set out the matters on which each person designated will testify for it. The persons designated must testify about information known or reasonably available to Cammack. Under

1

Rule 30(b)(6), Plaintiffs and Cammack must promptly meet and confer about the scope of this deposition.

Deposition exhibits will be provided electronically on a shared, internet-accessible drive to the witness and all counsel attending who request it.

**Matters for Examination**

1. Identify the Secretary of the Commonwealth of Massachusetts Corporations Division Identification Number under which you are currently operating and under which you were operating under in 2018.

2. Explain the relationship between Cammack LaRhette Advisors, LLC Identification Number 204668732 and Cammack LaRhette Advisors, LLC Identification Number 001613738.

3. Identify all of your assets and liabilities and the form, amount, and location of your assets (*e.g.*, cash (identifying bank and account number), securities (identify broker and account number), notes (identifying amount and debtor), land (identifying street address)).

4. Identify all of your assets and liabilities and the form, amount, and location of your assets (*e.g.*, cash (identifying bank and account number), securities (identify broker and account number), notes (identifying amount and debtor), land (identifying street address)) as of January 1, 2021.

5. Identify the provision that you have made for your potential liability in this action.

6. Identify the terms under which Cammack LaRhette Advisors, LLC or its assets were purchased by CapFinancial Group, LLC or any parent, affiliate, or subsidiary of CapFinancial Group, LLC, including the amount Cammack LaRhette Advisors, LLC received from that sale and the disposition of those proceeds.

7. Identify the members and managers of Cammack LaRhette Advisors, LLC for the past five years and if they hold any positions at Captrust.

8. Since 2020, have you commenced a dissolution and winding up; if so, identify the status of that process, and if not, do you intend to do so.

February 6, 2024                                  Respectfully submitted,

/s/ Joel D. Rohlf
Andrew D. Schlichter, Bar No. 4403267
Jerome J. Schlichter (admitted *pro hac vice*)
Michael A. Wolff (admitted *pro hac vice*)
Joel D. Rohlf (admitted *pro hac vice*)
SCHLICHTER BOGARD LLP
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
Phone: (314) 621-6115
Fax: (314) 621-7151
aschlichter@uselaws.com
jschlichter@uselaws.com
mwolff@uselaws.com
jrohlf@uselaws.com

*Attorneys for Plaintiffs*

# EXHIBIT B

# Cammack Retirement Group Joins CAPTRUST

CAPTRUST Surpasses Half a Trillion Dollars in Assets and Adds Location in NYC



NEWS PROVIDED BY
**CAPTRUST Financial Advisors** →
16 Feb, 2021, 09:00 ET

RALEIGH, N.C., Feb. 16, 2021 /PRNewswire/ -- **CAPTRUST Financial Advisors** (CAPTRUST) today announced that **Cammack Retirement Group** (Cammack Retirement) has joined the firm. With $154 billion in assets under advisement (AUA), the addition of Cammack Retirement elevates CAPTRUST's AUA to more than $600 billion.

Cammack Retirement has a 50-year history of helping retirement plan sponsors fulfill their fiduciary responsibilities and participants achieve a successful retirement. The New York City and Wellesley, MA-based firm, which also has an office in Lexington, KY, brings 38 new colleagues to CAPTRUST. The firm is led by Jeff Levy, Mike Volo, Emily Wrightson, Mike Sanders, and Earle Allen, who all join CAPTRUST as principals.

"Cammack Retirement Group and CAPTRUST are two of the largest firms in the institutional retirement space, with Cammack Retirement serving over 170 plan sponsors, which represents nearly 1.3 million participants," said Rick Shoff, CAPTRUST managing director, advisor group. "Bringing together our resources and deep expertise makes our offering unmatched in the industry."

"Becoming a part of CAPTRUST will help us to achieve two of our long-term goals: to expand our geographical footprint and add new lines of business and services for our existing clients," said Levy. "This exciting next chapter for Cammack Retirement will allow us the opportunity to grow, take on new challenges, and expand career opportunities for our employees."

"Cammack Retirement and CAPTRUST have decades of experience providing exceptional client service and fiduciary support for plan sponsors," said Volo. "Our shared values of prioritizing our clients, colleagues, and communities makes joining CAPTRUST a natural fit and will position us to best serve our clients now and in the future."

Cammack Retirement Group is the forty-seventh firm that has joined CAPTRUST since 2006 and will take on the CAPTRUST brand moving forward.

**About CAPTRUST**

Founded in 1997 in Raleigh, North Carolina, CAPTRUST is an independent registered investment advisor with a mission to enrich the lives of its clients, colleagues, and communities through sound financial advice, integrity, and a commitment to service beyond expectation. The firm provides investment advisory, investment management, and planning services to thousands of private clients and institutional investors such as retirement plan fiduciaries, endowments, foundations, and religious entities. With more than 800 employees across more than 50 locations nationwide, CAPTRUST oversees more than $60 billion in assets under management and $448 billion in assets under advisement (as of December 31, 2020).

To learn more, visit **captrust.com**.

SOURCE CAPTRUST Financial Advisors

Related Links

**http://www.captrust.com**

# Sign up for Top Stories & curated News