USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/22/2024_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. ALAN SACERDOTE, DR. HERBERT SAMUELS, MARK CRISPIN MILLER, MARIE E. MONACO, DR. SHULAMITH LALA STRAUSSNER, and JAMES B. BROWN, individually and as representatives of a class of participants and beneficiaries on behalf of the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration and the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration,

Plaintiffs,

-against-

CAMMACK LARHETTE ADVISORS, LLC,

Defendant.

17 Civ. 8834 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, New York University ("NYU") professors and participants in NYU's retirement plans, allege that Defendant, Cammack Larhette Advisors, LLC ("Cammack"), violated its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by providing flawed investment advice regarding two retirement plans that NYU maintains for its employees: (1) the NYU Retirement Plan for Members of the Faculty, Professional Research Staff and Administration, and (2) the NYU School of Medicine Retirement Plan for Members of the Faculty, Professional Research Staff and Administration (together, the "Plans"). *See generally* Am. Compl., ECF No. 105. Before the Court is Cammack's motion for judgment on the pleadings.[1] ECF No. 247. For the reasons stated below,

---

[1] In support of its motion, Cammack also asks the Court to take judicial notice of certain judicial materials and a contract between Cammack and NYU. ECF No. 248. For the reasons discussed below, the request is GRANTED.

the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[2]

In 2016, Plaintiffs filed an action against NYU, alleging that the school breached its fiduciary duty under ERISA "to act for the exclusive benefit of participants and beneficiaries and to ensure that Plan expenses are reasonable and the Plans' investments are prudent." ECF No. 1 ¶ 2 in 16 Civ. 6284. In their first amended complaint, Plaintiffs asserted several claims, faulting NYU for (1) allowing one of the Plans' recordkeepers,[3] TIAA-CREF, to mandate the inclusion of certain proprietary investment options in the Plans and require that it act as recordkeeper for its proprietary products, ECF No. 39 ¶¶ 195–204 in 16 Civ. 6284; (2) allowing the Plans to pay excessive recordkeeping fees, *id.* ¶¶ 205–16; (3) selecting for inclusion in the Plans investment options belonging only to TIAA-CREF and Vanguard (together, the "Recordkeepers"), when many of those options, including retail class shares of mutual funds,[4] had excessive fees that could not be justified by their poor performance, *id.* ¶¶ 217–33; and (4) failing to adequately monitor the Retirement Plan Committee (the "Committee"), which selected the investment options, *id.* ¶¶ 234–40. The Honorable Katherine B. Forrest (retired), who was initially assigned

---

[2] The Court assumes familiarity with the underlying history of this action and sets forth only those facts that are relevant to this order.

[3] Recordkeeping fees "cover necessary administrative expenses such as tracking account balances and providing regular account statements." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 969 (2d Cir. 2023). Recordkeeping may be done by the entity that provides the investment options or by a third party. *Id.* at 970. The Plans had two recordkeepers: TIAA-CREF and Vanguard. Am. Compl. ¶ 90.

[4] As alleged in Plaintiffs' amended complaint:

> Many mutual funds offer different share classes. Retail share classes are marketed to individuals with small amounts to invest. Institutional share classes are offered to investors with large amounts to invest, such as large retirement plans. The different share classes of a given mutual fund have the identical manager, are managed identically, and invest in the exact same portfolio of securities. The only difference is that the retail shares charge significantly higher fees. The share classes are otherwise identical in all respects.

Am. Compl. ¶ 51 (emphasis omitted).

2

to the matter, granted NYU's motion to dismiss most of the claims, *Sacerdote v. N.Y. Univ.* (*Sacerdote I*), No. 16 Civ. 6284, 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017), and after a bench trial, she found in favor of NYU on all remaining claims, *Sacerdote I*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018). On appeal, the Second Circuit reversed Judge Forrest's dismissal of the portion of Plaintiffs' claim concerning the inclusion of retail class shares in the Plans but did not disturb her disposal of the rest of Plaintiffs' claims. *Sacerdote I*, 9 F.4th 95, 105 (2d Cir. 2021).

That background is relevant to this action, which Plaintiffs commenced in 2017 against NYU School of Medicine and NYU Langone Hospitals, the Committee, and individual members of the Committee (together, the "NYU Defendants"). *See* ECF No. 1. In their initial complaint, Plaintiffs made breach-of-fiduciary-duty claims similar to the ones it lost on in *Sacerdote I*. *See generally id.* After Plaintiffs amended their complaint to add Cammack, the Plans' investment advisor, as a defendant, *see* Am. Compl., Judge Forrest dismissed the amended pleading as duplicative of *Sacerdote I*. *See Sacerdote v. N.Y. Univ. Sch. of Med.* (*Sacerdote II*), No. 17 Civ. 8834, 2018 WL 1054573 (S.D.N.Y. Feb. 23, 2018), *recons. denied*, 2018 WL 6253366 (S.D.N.Y. Mar. 22, 2018). Although no *Sacerdote II* defendant was named as a defendant in *Sacerdote I*, Judge Forrest held that that the *Sacerdote II* defendants were in privity with NYU and that dismissal was therefore warranted. *Id.* at *2–3. Plaintiffs appealed the dismissal as to Cammack, and the Second Circuit vacated and remanded, holding that Cammack and NYU were not in privity because "Cammack and NYU had separate and distinct responsibilities as co-fiduciaries to the [P]lans, and could be found liable for [P]laintiffs' injuries for separate reasons." *Sacerdote II*, 939 F.3d 498, 508 (2d Cir. 2019).

Shortly after the Second Circuit's mandate issued, the undersigned judge, to whom the matter had since been reassigned, stayed *Sacerdote II* pending the plaintiffs' ongoing appeal in

3

*Sacerdote I*. ECF No. 192. The Second Circuit issued its opinion in *Sacerdote I* in August 2021, and the Court lifted its stay in *Sacerdote II*. ECF No. 211. In December of that year, the Court once again stayed this case pending the outcome of two related matters before the U.S. Supreme Court. ECF No. 216. After the Supreme Court disposed of those actions, which included the denial of a petition for a writ of certiorari in *Sacerdote I*, the Court again lifted the stay and granted Cammack leave to move for judgment on the pleadings. ECF Nos. 221, 242. While Cammack's motion was pending, the Honorable Valerie Figueredo granted the plaintiffs in *Sacerdote I* leave to file a second amended complaint. ECF No. 438 in No. 16 Civ. 6284. The undersigned denied NYU's motion to vacate that order, ECF No. 457 in 16 Civ. 6284, and directed the parties to submit supplemental briefing addressing the impact of that decision on Cammack's motion for judgment on the pleadings, ECF No. 256.

Before the Court are Cammack's motion for judgment on the pleadings, ECF No. 247, its memorandum and request for judicial notice in support of its motion, Def. Mem., ECF No. 252; ECF No. 248, Plaintiffs' memorandum in opposition, Pl. Mem., ECF No. 253, Cammack's reply memorandum, ECF No. 254, and the parties' supplemental briefing on the order granting leave for the plaintiffs in *Sacerdote I* to file their second amended complaint, ECF No. 266.

## DISCUSSION

I. <u>Judicial Notice</u>

Usually, when facts outside the complaint are presented to and not excluded by a court analyzing a motion for judgment on the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (alteration adopted) (citation omitted). However, under Federal Rule of Evidence 201(b), a court may at any time take

4

judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Cammack asks the Court to take judicial notice of orders, pleadings, and memoranda publicly filed in *Sacerdote I*. ECF No. 248 at 3–4. "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). The Court therefore takes judicial notice of the *Sacerdote I* materials for the fact of their existence.

Cammack next requests that the Court take judicial notice of the Investment Advisory Services Agreement between Cammack and NYU (the "Agreement") and Exhibit D to the Agreement, Special Projects to Investment Advisory Services Agreement ("Exhibit D"). ECF No. 248 at 4. As relevant to this action, these documents enumerate the advisory services that Cammack was contractually obligated to provide to NYU. *See* ECF Nos. 248-13, 248-14. Plaintiffs do not oppose Cammack's request.

The Court takes judicial notice of these documents as well. On a motion for judgment on the pleadings, a court may take judicial notice of a document that is "integral" to the complaint, that is, a document whose "terms and effect" the complaint "relies heavily upon," even if the complaint does not specifically reference the document by name. *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Plaintiffs' claims, and specifically their claims regarding TIAA-CREF's cross-selling of its products to Plan participants, concern the scope of Cammack's fiduciary duty regarding the

Plans, and the contract between Cammack and NYU is highly relevant to that duty. Furthermore, Plaintiffs were aware of the contents of the Agreement and Exhibit D, as they entered both documents into evidence during the bench trial in *Sacerdote I*. ECF No. 248 at 4; *see also* ECF No. 258-92 in 16 Civ. 6284. Because Plaintiffs had actual notice of the information in the Agreement and Exhibit D, the Court can consider the effect of these documents without turning Cammack's Rule 12(c) motion into one for summary judgment. *See Chambers*, 282 F.3d at 153.

II. Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration adopted) (quoting *Patel v. Contemp. Classics*, 259 F.3d 123, 126 (2d Cir. 2001)). When evaluating a Rule 12(c) motion, the Court considers whether a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). The Court draws all reasonable inferences in the plaintiff's favor and abstains from "weigh[ing] competing allegations asserted by the moving party." *Id.* In conducting its analysis, the Court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

In their amended complaint, Plaintiffs assert two claims against Cammack. The first, Count X, alleges that Cammack breached its fiduciary duties as investment advisor under 29

U.S.C. § 1104(a)(1)(A) and (B) by providing imprudent investment advice concerning the Plans and recommending that the Plans include investment options "tainted by the [R]ecordkeepers' financial interest." Am. Compl. ¶¶ 318–32. The second, Count XI, alleges that Cammack breached its duties as co-fiduciary under 29 U.S.C. § 1105(a) by offering advice that caused the NYU Defendants to "commit the breaches set forth in Counts I, III, V, VII, and VIII [of Plaintiffs' amended complaint]." *Id.* ¶¶ 333–39. The Court addresses the two counts in turn.

### A. Breach of Fiduciary Duty

"To state a claim for breach of fiduciary duty under ERISA, a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty." *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 335 (S.D.N.Y. 2024) (alterations adopted) (citations omitted). The fiduciary duty imposed by ERISA encompasses a duty of prudence and a duty of loyalty. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985). The former requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims"; the latter requires the fiduciary to act "for the exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)–(B).

In Count X, Plaintiffs allege that Cammack violated its duty of prudence by using inappropriate benchmarks to evaluate the Plans' fees, leading to the selection and retention of expensive investment options whose performance did not justify their costs; failing to engage in a prudent process to monitor and evaluate the Plans' investment options, leading to the inclusion of the poorly performing CREF Stock Account and TIAA Real Estate Account; and accepting a

7

"lock-up" arrangement whereby the Plans were obligated to include certain of TIAA-CREF's proprietary investment products, regardless of their performance. Am. Compl. ¶¶ 318–23, 326–27. Plaintiffs assert that Cammack violated its duty of loyalty by failing to consider recommending investment options that were not the Recordkeepers' proprietary funds. *Id.* ¶¶ 324–25. Cammack argues that Plaintiffs are collaterally estopped from relitigating these issues, each of which failed in *Sacerdote I*. Def. Mem. at 17–25.

Issue preclusion "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (citation omitted). The doctrine "bars litigation of an issue when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)).

As to the first two portions of Claim X—Cammack's alleged use of inappropriate benchmarks to assess investment performance and failure to engage in a prudent investment monitoring process—issue preclusion does not apply. The reason is simple: the same issues never arose in *Sacerdote I*, which addressed only whether *NYU and the Committee* acted imprudently regarding those decisions. *See Sacerdote I*, 328 F. Supp. 3d at 307–17 (finding that NYU and the Committee carefully monitored investment performance and used appropriate benchmarks to assess investment performance); *Sacerdote I*, 9 F.4th at 120–21 (upholding Judge Forrest's finding that the Committee appropriately monitored the performance of the CREF Stock Account and TIAA Real Estate Account). Although the issue of whether NYU and the

Committee acted prudently is closely related to the issue of whether Cammack acted prudently, daylight exists between the two. As the Second Circuit explained, "Cammack and NYU had separate and distinct responsibilities as co-fiduciaries to the [P]lans . . . . A reasonable trier of fact could find that Cammack provided flawed advice to NYU and was liable for [P]laintiffs' losses, while also finding that NYU reasonably relied on Cammack's advice notwithstanding its flawed nature." *Sacerdote II*, 939 F.3d at 508. The Court cannot deprive Plaintiffs of their "full and fair opportunity" to litigate these claims against Cammack. *Proctor*, 715 F.3d at 414.

Plaintiffs are precluded, however, from relitigating whether a "lock-up" agreement like the one NYU had with TIAA-CREF is inherently imprudent. In *Sacerdote I*, Judge Forrest held that Plaintiffs could not state a claim that NYU's arrangement with TIAA-CREF, in which NYU was required to use TIAA-CREF's services and include certain investment options in the Plans, was imprudent absent further allegations that the investment options were "plainly risky." *Sacerdote*, 2017 WL 3701482, at *7 (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719–20 (2d Cir 2013)). Judge Forrest also held that "merely having a contractual arrangement for recordkeeping services does not, as a matter of law, constitute a breach of the duty of prudence." *Id.* at *8. These determinations were necessary to Judge Forrest's dismissal of Count I against NYU. *See id.* at *7–8. Because Plaintiffs' allegations with respect to the "lock-up" agreement in *Sacerdote II* are identical to their allegations in *Sacerdote I*, that is, Plaintiffs argue that the mere existence of the "lock-up" agreement constitutes a breach of fiduciary duty, the issue is precluded here. *Compare* ECF No. 39 ¶¶ 83–84, 195–99 in 16 Civ. 6284, *with* Am. Compl. ¶¶ 69–70, 135, 327.

Plaintiffs also are barred from relitigating whether a fiduciary breaches its duty of loyalty as a matter of law by allowing a retirement plan to include its recordkeeper's proprietary

9

investment products.  In *Sacerdote I*, Plaintiffs alleged that, "[b]y allowing TIAA-CREF and Vanguard to put their proprietary investments in the Plans without scrutinizing those providers' financial interest in using funds that provided them a steady stream of revenue sharing payments, [NYU] failed to act in the exclusive interest of [Plan] participants."  ECF No. 39 ¶ 209 in 16 Civ. 6248.  In this action, Plaintiffs make a nearly identical argument, maintaining that Cammack failed to consider that TIAA-CREF and Vanguard's proprietary funds "were tainted by the [R]ecordkeepers' financial interest in including these funds in the Plans" and therefore "failed to make investment recommendations based solely on the merits of the investment funds and what was in the interest of the [Plan] participants," breaching the fiduciary duty of loyalty.  Am. Compl. ¶¶ 324–25.

In *Sacerdote I*, Judge Forrest explained that "to implicate the concept of 'loyalty,' a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else"; allegations that a party took an action that merely "ha[d] the effect of furthering the interests of a third party" are not sufficient. *Sacerdote I*, 2017 WL 3701482, at *5–6.  Absent factual allegations supporting "purposeful action" by a fiduciary to benefit a third party, there can be no liability for breach of loyalty.  This ruling resulted from fulsome litigation attendant to NYU's motion to dismiss and was necessary to Judge Forrest's determination that NYU's inclusion of the Recordkeepers' proprietary funds in the Plans did not plausibly amount to a breach of its fiduciary duty.  *See id.*  Because Plaintiffs' corresponding claim against Cammack likewise includes no allegations that Cammack acted with the intention of benefitting the Recordkeepers, that portion of Count X cannot stand.

B.  Breach of Co-fiduciary Duty

To state a claim for breach of co-fiduciary duty, a party must demonstrate that a co-fiduciary (1) "participate[d] knowingly in, or knowingly undert[ook] to conceal, an act or omission of such other fiduciary, knowing such act or omission [was] a breach"; (2) "enabled such other fiduciary to commit a breach" by virtue of his own breach; or (3) "ha[d] knowledge of a breach by such other fiduciary, unless he ma[de] reasonable efforts under the circumstances to remedy the breach."  29 U.S.C. § 1105(a).  A co-fiduciary "may be liable under § 1105(a) even if their co-fiduciary's breach is beyond the scope of their own discretionary authority."  *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 480 (S.D.N.Y. 2005).

Plaintiffs allege that Cammack breached its duties as co-fiduciary by offering imprudent advice that caused the NYU Defendants to: enter into the "lock-up" agreement with TIAA-CREF; allow the Plans to pay unreasonable recordkeeping fees (the "Recordkeeper Claim"); use the wrong benchmark to evaluate investment performance, leading to the retention of expensive Plan investment options that performed poorly; select and retain for the Plan expensive retail class shares of mutual funds (the "Share Class Claim"); and permit TIAA-CREF to cross-sell its own products and services to plan participants using participant data (the "Cross-Selling Claim").  Am. Compl. ¶¶ 334–36.  Cammack argues that it is entitled to judgment on the pleadings as to the majority of this claim, first, because most of the claim is "derivative of the claims against the dismissed NYU Defendants," and second, because several of the relevant activities are outside the scope of Cammack's fiduciary duty.  Def. Mem. at 12–16 (capitalization altered).

The Court first addresses the issue of derivative claims.  According to Cammack, "[b]ecause the NYU Defendants have been dismissed with prejudice from th[is] [a]ction, and all

11

of Plaintiffs' claims in *Sacerdote I* have either been dismissed or rejected at trial and on appeal, except for the [Share Class Claim], Count XI against Cammack must be dismissed except with respect to the [Share Class Claim]." *Id.* at 12.

A claim for breach of co-fiduciary duty is a derivative claim that "cannot survive absent a viable claim for breach of a duty of prudence." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014); *see also Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129, 143 (2d Cir. 2024) (explaining that "a derivative claim . . . requires an underlying breach"). Here, Count XI is derivative of Counts I, III, V, VII, and VIII of the amended complaint, each of which Judge Forrest dismissed as duplicative of the claims in *Sacerdote I*. *See Sacerdote II*, 2018 WL 1054573, at *4. And as described above, in *Sacerdote I*, all of Plaintiffs' analogous claims against NYU, except for the Cross-Selling and Share Class Claims, were either dismissed or disposed of at trial, so those portions of Count XI must fail.

Plaintiffs do not dispute that Count XI is a derivative claim, but they contend that, on a motion for judgment on the pleadings, the Court may not "excise portions of a claim" such that some parts of a claim remain while others do not. Pl. Mem. at 7. The Court disagrees. Plaintiffs do not cite any caselaw from this Circuit suggesting that a court lacks discretion to unbundle factually expansive claims into more manageable portions, nor could they; as Plaintiffs must realize, Judge Forrest broke down an analogous count in *Sacerdote I* into several component claims, and the Second Circuit did not find fault with her approach. *See Sacerdote I*, 2017 WL 3701482, at *3; *Sacerdote I*, 9 F.4th at 103–04.

Next, the Court considers whether any of Cammack's alleged breaches were outside of the scope of its fiduciary duty. Cammack contends that Plaintiffs' Cross-Selling claim fails

12

"because Cammack was not a fiduciary with regard to th[at] activit[y]."[5] Def. Mem. at 13. In support, Cammack cites the Agreement, which specifies that Cammack "is only a co-fiduciary for purposes of the Investment Advisory Services set forth on Exhibit A," specifically:

1. Initial Review and Assessment; Transition to New Menu
    a. Review and provide comments on existing investment policy;
    b. Establish a strategy and corresponding performance standards for evaluating current investments/providers;
    c. Evaluate current investments by asset class;
    d. Develop a fee/expense analysis and comparison of current investments;
    e. Recommend a default fund which meets the standards of a qualified default investment alternative under ERISA for participants who do not make affirmative investment elections[;]
    f. If appropriate, recommend possible investment changes both with respect to structure and menu, with the intention that such menu satisfy ERISA section 404(c); and
    g. If appropriate, assist with transition to the new menu, including recommendations with respect to mapping.

Agreement Ex. A.

Although Cammack's co-fiduciary duties, as laid out in the Agreement, do not appear to include providing advice with respect to cross-selling, the text of the Agreement is not dispositive. ERISA defines a fiduciary "not in terms of formal trusteeship, but in *functional* terms of control and authority over [a] plan, thus expanding the universe of persons subject to fiduciary duties." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (citing 29 U.S.C. § 1002(21)(A)); *see also Polaroid ERISA Litig.*, 362 F. Supp. 2d at 472 ("An individual may be a fiduciary for ERISA purposes either because the plan documents explicitly describe fiduciary responsibilities or because that person functions as a fiduciary."). Plaintiffs allege that Cammack

---

[5] Cammack asserts that the Recordkeeper claim fails for the same reason. Def. Mem. at 13. Because the Recordkeeper claim is, as described above, a derivative claim without an underlying breach, the Court need not assess whether the relevant activity fell within the scope of Cammack's fiduciary duty. But for the reasons that follow, if the Recordkeeper claim were *not* derivative, the Court could not say at this time that recordkeeper-related advice fell outside the scope of Cammack's fiduciary duties.

"provid[ed] imprudent investment advice regarding . . . TIAA[-CREF]'s use of confidential participant account information to cross-sell products" and "failed to monitor all sources of income and benefits received by the Plans' recordkeepers, including . . . the benefits TIAA[-CREF] received through the use of participant information to cross-sell its products and services." Am. Compl. ¶¶ 334, 336. Drawing all reasonable inferences in Plaintiffs' favor, the Court cannot say at this stage in the litigation that Cammack's duty as co-fiduciary did not extend to providing advice concerning the Recordkeepers' use of participant data. *See Polaroid ERISA Litig.*, 362 F. Supp. 2d at 473.

## CONCLUSION

For the foregoing reasons, Cammack's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated: November 22, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge