**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

DR. ALAN SACERDOTE, et al.,

                            Plaintiffs,

                -against-

CAMMACK LARHETTE ADVISORS, LLC, et al.,

                            Defendants.

---------------------------------------------------------------------X

**17-CV-8834 (AT) (VF)**

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge:**

Pending before the Court is Plaintiffs' motion to join CapFinancial Group, LLC ("CapTrust") as a party under Federal Rule of Civil Procedure 25(c). ECF No. 324

## BACKGROUND[1]

This is an action for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") involving two New York University ("NYU") Retirement plans. ECF No. 105 ¶¶ 9-22. Defendant Cammack LaRhette Advisors, LLC ("Cammack") was the investment advisor to the plans. Id. at ¶¶ 38, 106, 319. Plaintiffs allege that Cammack breached its fiduciary duty by providing imprudent advice to NYU regarding the management and administration of the plans, resulting in the plans suffering substantial losses. Id. at ¶¶ 38, 106-18, 154, 159, 165, 168-69, 175-78, 222, 294, 318-32.

The scheduling order in this case set a deadline of July 19, 2022, for any motions "to amend or to join additional parties." See ECF No. 231 at ¶ 3. On July 14, 2025, Plaintiffs filed a motion to join CapTrust as a party under Rule 25(c). ECF Nos. 324; see also ECF Nos. 328, 340.

---

[1] Familiarity with the factual background of this case—which can be found in opinions of this Court and the Second Circuit (see ECF Nos. 137, 188, 304)—is presumed.

Plaintiffs contend that Cammack transferred its assets, operations, and personnel to CapTrust

following an acquisition that occurred in February 2021. ECF No. 328 at 2-3. More specifically,

Plaintiffs argue that CapTrust is the successor-in-interest to Cammack because it substantially

continued Cammack's business operations, personnel, and client relationships, and CapTrust had

actual or constructive notice of Plaintiffs' claims against Cammack at the time of the acquisition.

Id. at 5-10. CapTrust filed an opposition to the Rule 25(c) motion on August 29, 2025. ECF No.

337. CapTrust argues that the Rule 25(c) motion should be denied as untimely under the Court's

scheduling order, and that Plaintiffs have not demonstrated good cause for their untimely motion.

Id. at 3-9. CapTrust further contends that joinder would only prolong and complicate resolution

of this already long-pending matter. Id. at 10-12. Alternatively, CapTrust points to Section 409(b)

of ERISA, 29 U.S.C. § 1109(b), and argues that ERISA forecloses successor liability for

breaches of fiduciary duty. Id. at 12-15.

## LEGAL STANDARD

A. Federal Rules of Civil Procedure 15 and 16

"Rules 15 and 16 of the Federal Rules of Civil Procedure[ ] set forth the standards under

which a party may amend a pleading." Summerwind West Condominium Owners Assoc., Inc. v.

Mt. Hawley Ins. Co., No. 22-CV-3165 (JPC), 2023 WL 8307561, at *3 (S.D.N.Y. Dec. 1, 2023).

"In the ordinary course, the Federal Rules of Civil Procedure provide that courts 'should freely

give leave' to amend a complaint 'when justice so requires.'" Williams v. Citigroup Inc., 659

F.3d 208, 212 (2d Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)).

At the outset of litigation, "[a] party may amend its pleading once as a matter of course"

within certain prescribed time limits. Fed. R. Civ. P. 15(a)(1). Outside those limits, a party may

amend only with the written consent of the opposing party or with leave of the court. Fed. R. Civ. P. 15(a)(2).

"Generally, '[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)) (alteration in original). By itself, "mere delay," is not a sufficient basis "to justify denial of a Rule 15(a) motion." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000). Absent some reason for doing so, denying leave to amend is an abuse of the district court's discretion. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Rule 15(a) governs the amendment of pleadings, and Rule 16(b) "directs district court judges to set scheduling orders limiting the time to make such amendments." Parker, 204 F.3d at 339. According to Rule 16(b), within 90 days after any defendant has been served with the complaint or within 60 days after any defendant has appeared (whichever comes first), the district court shall enter a scheduling order setting deadlines for subsequent proceedings in the case, including a deadline for the joinder of parties and amendments to the pleadings. Fed. R. Civ. P. 16(b)(2), (3). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" Parker, 204 F.3d at 339-40 (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b))). Allowing the pleadings to be amended past the court-ordered deadline without a showing of good cause "would render scheduling orders meaningless." Id. at 340 (quoting Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam)).

Where, as here, a scheduling order governs amendments to the complaint, "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." Holmes, 568 F.3d at 334-35 (quoting Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003)) (cleaned up); see also Sacerdote v. New York University, 9 F.4th 95, 115 (2d Cir. 2021). The Rule 16(b) standard may therefore "limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed" and the party is unable to show good cause for the untimely request. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007).

"Whether good cause exists turns on the 'diligence of the moving party.'" Holmes, 568 F.3d at 335. To satisfy the good-cause standard, "the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." Leonard v. Abbott Labs., Inc., No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *3 (E.D.N.Y. Mar. 5, 2012) (quoting Sokol Holdings, Inc. v. BMD Munai, Inc., No. 05-CV-3749 (KMW) (DF), 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2019)). "[T]he court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint." Cummins, Inc. v. New York Life Ins., No. 10-CV-9252 (TPG), 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012); Sokol Holdings, Inc., 2009 WL 2524611 at *7-8 (collecting cases demonstrating that good-cause standard is not met where proposed amendment rests on information that party knew or should have known prior to deadline in scheduling order).

Good cause requires a showing that the delay "stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." Eberle v. Town of Southampton, 985 F. Supp.

2d 344, 347 (E.D.N.Y. 2013) (quoting Fermin v. Toyota Material Handling, U.S.A., Inc., No. 10-CV-3755 (JLL), 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012)). In exercising its discretion under Rule 16(b), the Court "may [also] consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Id. (quoting Kassner, 496 F.3d at 244) (alteration in original); see Leonard, 2012 WL 764199 at *9 ("[T]he Court has the discretion to permit an untimely amendment where, as here, the Defendant will not be prejudiced[.]"). Even if a movant demonstrates good cause, the Court retains the sound discretion to deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy, 482 F.3d at 200.

B. Federal Rule of Civil Procedure 25(c)

Rule 25 governs the substitution of parties when an interest is transferred. See Fed. R. Civ. P. 25(c). Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by . . . the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). The person or entity to be substituted or joined under Rule 25(c) is known as a "successor in interest.'" Koehler v. Bank of Bermuda Ltd., No. M18-302 (CSH), 2002 WL 1766444, at *2 (S.D.N.Y. July 31, 2002). "Substitution of a successor in interest . . . under Rule 25(c) is generally within the sound discretion of the trial court." Taberna Cap. Mgmt., LLC v. Jaggi, No. 08-CV-11355 (DLC), 2010 WL 1424002, at *2 (S.D.N.Y. Apr. 9, 2010) (citing Organic Cow, LLC v. Center for New Eng. Dairy Compact Research, 335 F.3d 66, 71 (2d Cir. 2003)); see also In re Chalasani, 92 F.3d 1300, 1312 (2d Cir. 1996) ("[G]ranting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court.").

5

"The 'primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action.'" Taberna Cap., 2010 WL 1424002, at *2 (quoting Banyai v. Mazur, No. 00-CV-9806 (SHS), 2009 WL 3754198, at *3 (S.D.N.Y. 2009) (collecting cases)); Dollar Dry Dock Sav. Bank v. Hudson St. Dev. Assoc., No. 92-CV-3737 (SAS), 1995 WL 412572, at *4 (S.D.N.Y. July 12, 1995). "Rule 25(c) substitution is a procedural mechanism designed to facilitate the continuation of an action when an interest in a lawsuit is transferred and does not affect the substantive rights of the parties." Travelers Ins. Co. v. Broadway West Street Assoc., 164 F.R.D. 154, 164 (S.D.N.Y. 1995). The rule's purpose is "to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit." Software Freedom Conservancy, Inc. v. Best Buy Co., Inc., No. 09-CV-10155 (SAS), 2010 WL 4860780, at *2 (S.D.N.Y. Nov. 29, 2010) (citation omitted).

"If a transferee is joined or substituted as a plaintiff or defendant, it is not because its substantive rights are in question, but rather because it has come to own the property in issue." Id. (citation omitted). "A successor in interest is bound by a judgment against its predecessor even if substitution is not effected." Koehler, 2002 WL 1766444, at *2. "Generally, a successor in interest may be a person or entity who acquires the particular interest at stake in the litigation, such as a certain piece of property or a contractual right, or who acquires all the assets and liabilities of a party to the litigation." Id. at *3. "Although substitution usually is effected during the course of litigation, substitution is appropriate even after final judgment or on appeal if the transfer of interest took place after the case was filed." Software Freedom Conservancy, 2010 WL 4860780, at *2 (citation omitted). "The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in

6

interest even though he is not named." McKesson Info. Sol., Inc. v. Bridge Med., Inc., No. 02-CV-2669 (FCD) (KJM), 2006 WL 658100, at *2 (E.D. Cal. Mar. 13, 2006) (citation omitted). "Any such order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." Id. (internal quotation marks and citation omitted).

## DISCUSSION

A.  Plaintiffs need not show good cause under Rule 16(b).

CapTrust argues that Plaintiffs' motion is untimely and Plaintiffs have not shown good cause, as required by Rule 16 for amendments after a court-ordered deadline. ECF No. 337 at 3-9. Relying on the July 19, 2022 deadline for motions to join additional parties, CapTrust argues that Plaintiffs have not shown good cause for their untimely motion, which they filed three years after the Court's deadline and is based on information Plaintiffs had in their possession long before that deadline passed. Id. Plaintiffs counter that Rule 16 does not apply because this is not a motion to add or join new parties, and motions for substitution under Rule 25(c) can be made at any time. ECF No. 340 at 2-3.

The Court is not aware of any case (and the parties have not cited one) that has expressly considered whether Rule 16's good-cause standard applies to Rule 25(c) motions filed after a court-ordered deadline for amendments to the pleadings or joinder. All of the cases CapTrust points to are distinguishable. See ECF No. 356 at 1-2. CapTrust cites a case where a court denied a Rule 25(c) motion as untimely, McKesson Information Solutions, Inc. v. Bridge Medical, Inc., but in that case the court did not mention, much less discuss, the application of Rule 16.[2] See

---

[2] CapTrust also points the Court to other cases that apply Rule 16's good-cause requirement but in the context of a Rule 25(a) motion for substitution: Bolus v. Carnicella, No. 05-CV-1062 (MWB), 2020 WL 6203056 (M.D. Pa. Oct. 22, 2020), and Jipeng Du v. Wan Sang Chow, No. 18-CV-1692 (ADS) (AKT), 2019 WL 3767536 (E.D.N.Y. Aug. 9, 2019). Bolus is a

2006 WL 658100, at *3 (denying Rule 25(c) motion because of "belated attempt[ ]" to join party where addition would lead to "delay and cost" and prejudice). Likewise, the cases cited by Plaintiffs in support of their argument that the motion is timely do not consider or discuss the application of Rule 16. See ECF No. 328 at 13. It is thus not apparent from any of Plaintiffs' cases that a court considered and rejected application of Rule 16(b)'s good-cause requirement in deciding a Rule 25(c) motion.

For the reasons that follow, Rule 16's good-cause standard should not apply to Plaintiffs' Rule 25(c) motion. Applying Rule 16's good-cause requirement is not appropriate because of the different purposes served by Rule 16(b) and Rule 25(c). Rule 16(b) "is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" Parker, 204 F.3d at 339-40. But substitution under Rule 25(c), unlike amendment of claims or the addition of parties, does not alter the claims and "[t]he merits of the case and the disposition of the property are still determined with respect to the original parties." Software Freedom Conservancy, 2010 WL 4860780, at *2 (citation omitted); see also Alfadda v. Fenn, No. 90-CV-4470 (LMM), 1993 WL 526065, at *4 (S.D.N.Y. Dec. 16, 1993) ("Joinder or

---

case where a Rule 25(a) motion was denied because of undue delay in seeking to substitute an estate after a party's death and where the Court applied Rule 16(b)'s good-cause standard. But Rule 25(a), unlike Rule 25(c), imposes time limits—a party must file a motion for substitution within "90 days after service of a statement noting the death." See Bolus, 2020 WL 6203056, at *4. And the cases cited by CapTrust in its opposition brief (ECF No. 337 at 4) also did not involve a motion under Rule 25(c). See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 606-07 (9th Cir. 1992) (motion to amend complaint to add additional party); City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 784-85 (S.D.N.Y. 2017) (motion to join new party). Additionally, CapTrust points to Best Label Co. v. Custom Label & Decal, No. 19-CV-3051 (LHK), 2021 WL 5415260 (N.D. Cal. Nov. 19, 2021). But in that case, the Court denied the Rule 25(c) motion because the "Plaintiff did not produce sufficient evidence that a transfer of interest took place" and the Plaintiff "concede[d] that it must show good cause for the requested amendments." Id. at *4, 8 (internal quotation marks omitted). The Best Label court thus did not have to decide whether the good-cause requirement of Rule 16 applied to Rule 25(c) motions.

substitution under Rule 25(c) is entirely a matter of convenience, and regardless of whether either is ordered, the respective substantive rights of the transferor or transferee are not affected."). That substitution does not affect the claims in the action in any way is apparent from the fact that Rule 25(c) "does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C Federal Practice and Procedure § 1958 (3d ed. 2010); Amron v. MLB Advanced Media L.P., No. 24-CV-2930 (PAE), 2024 WL 5009110, at *2 (S.D.N.Y. Dec. 6, 2024) (explaining that when a transferee is joined or substituted "it is not because its substantive rights are in question, but rather because it has come to own the property in issue") (citation omitted); see also SEC v. Collector's Coffee Inc., 451 F. Supp. 3d 294, 298 (S.D.N.Y. 2020) (explaining that "[i]t is not mandatory that a substitution be made in every case of a transfer of interest") (alteration in original, citation omitted). The "purpose" for Rule 25(c) "is 'to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit.'" Learning Annex Holdings, LLC v. Rich Global, LLC, No. 09-CV-4432 (SAS), 2011 WL 3423927, at *1 (S.D.N.Y. Aug. 3, 2011) (quoting James Wm. Moore et al., Moore's Federal Practice ¶ 25.30).

Imposing a good-cause requirement on Rule 25(c) motions is nonsensical given the purpose served by the rule. Substitution is not mandatory and, even if a party does not seek substitution, the judgment will be binding on a successor-in-interest. The Rule simply serves as a mechanism to simplify the action and expedite the ultimate resolution. Amron, 2024 WL 5009110, at *2. Additionally, unlike other types of amendments to the pleadings (to which Rule 16(b) applies), courts have permitted Rule 25(c) substitution even after entry of a final judgment.

9

See Learning Annex Holdings, LLC, 2011 WL 3423927, at *1-2 (granting Rule 25(c) motion after verdict). Moreover, imposing Rule 16(b)'s good-cause requirement on Rule 25(c) motions also would not serve the purpose of Rule 16. As discussed, Rule 16(b) "is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" Parker, 204 F.3d at 339-40. But substitution under Rule 25(c) does not add new claims, assert new theories of liability, or even add new parties. It does nothing to change the substantive landscape of the litigation.[3] Indeed, once successor liability is established, the court gains personal jurisdiction over the successor, if the court had personal jurisdiction over the predecessor in interest, "simply as a consequence of [the successor's] status as a successor in interest." McDonald v. New York Regional Rail Corp., No. 05-CV-3521 (SLT) (RER), 2015 WL 2091841, at *2 (E.D.N.Y. Apr. 30, 2015).

B.   Even if Rule 16(b) applies, it does not bar Plaintiffs' Rule 25(c) motion.

Even if the Court applied Rule 16(b)'s good-cause requirement, it would not bar Plaintiffs' motion. Under Rule 16(b)'s good-cause analysis, a court looks not only at the moving party's diligence but it may also determine whether "allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (explaining that good-cause analysis under Rule 16(b) may consider prejudice to the opponent in addition to the moving party's diligence); Alvarado v. 58 West LLC, No. 19-CV-7694 (AT), 2021 WL 9793332, at *1 (S.D.N.Y.

---

[3] Because the decision to grant substitution is discretionary, perhaps subsumed in a court's examination of whether substitution "will expedite and simplify the action," Amron, 2024 WL 5009110, at *2, is an inquiry consistent with Rule 16(b). That is, a court may examine whether a party who unduly delayed in seeking substitution can nevertheless demonstrate that substitution, at that particular posture of the case, would expedite or simplify the action.

May 28, 2021) ("Even when good cause is not shown, courts can still assess whether allowing further amendment of the pleadings would prejudice the defendants."); see also Taberna Cap., 2010 WL 1424002, at *2 (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)) (explaining that prejudice to opposing party is "the most important factor" in assessing whether leave to amend should be granted). Here, although Plaintiffs were not diligent in seeking substitution, CapTrust has not shown that it will be prejudiced by substitution.

Beginning with diligence, the record does not demonstrate that Plaintiffs were diligent in seeking substitution. The agreement between Cammack and CapTrust, upon which Plaintiffs rely to argue that CapTrust is a successor-in-interest, was executed on January 29, 2021, and the agreement was publicly announced a few weeks later. See ECF No. 326-1 (press release dated February 16, 2021). The motion for substitution was filed on July 16, 2025. ECF No. 324. Plaintiffs do not contend that they did not learn of the acquisition until several years later. Nor could they. The acquisition was discussed in publications, both Cammack and CapTrust filed public disclosures with the Securities and Exchange Commission ("SEC") discussing the agreement, and Cammack announced the cessation of its business operations in October 2021. See ECF Nos. 326-2, 326-3, 326-4, 326-5, 326-6; see also ECF No. 337 at 5 n.4 (citing news articles about acquisition). As all of this unfolded publicly, Plaintiffs were engaged in this litigation. Plaintiffs have long been aware of the acquisition by CapTrust that resulted in the cessation of Cammack's business, and Plaintiffs do not argue otherwise.

Instead, Plaintiffs argue that discovery from Cammack only recently disclosed the facts necessary to establish successor liability, pointing to the depositions of Jeffrey Levy ("Levy") and Jan Rezler ("Rezler"). See ECF No. 328 at 7-8, 14; ECF No. 340 at 3-4. Levy was deposed

on March 29, 2024, and his deposition was continued on May 23, 2025.[4] ECF No. 327-1 (Levy deposition excerpts). Rezler was deposed on February 13, 2024. ECF No. 326-8 (Rezler deposition excerpts). But the information Plaintiffs point to from Levy and Rezler was available to Plaintiffs from other public sources they themselves cite in support of their contention that CapTrust substantially continued Cammack's business operations, personnel, and client relationships.

For example, Plaintiffs point to Levy's testimony that he had an ownership share in Cammack and through the acquisition, he gained an ownership interest in CapTrust. ECF No. 328 at 3. But it was publicly disclosed in February 2021 that the principals of Cammack became principals of CapTrust. ECF No. 326-1 at 1 (stating that Cammack is "led by Jeff Levy, Mike Volo, Emily Wrightson, Mike Sanders, and Earle Allen, who all join CAPTRUST as principals," and also indicating that Cammack brought to CapTrust "38 new colleagues"). Plaintiffs also point to Levy's testimony that after the acquisition, Cammack's clients moved to CapTrust, and Levy continued advising retirement plans without interruption. ECF No. 328 at 3. But even before Levy's deposition, it would have been evident that Cammack's clients moved to CapTrust, as an SEC filing from March 26, 2021, indicated that clients affirmatively or constructively consented to assignment of their advisory agreements to CapTrust. See ECF No. 326-4 at 21; see also ECF No. 326-2 at 1 (news article discussing "the addition of Cammack's $154 billion book of business" and "clients moving over"). And minutes from a March 10, 2021 meeting of the NYU Retirement Plan Administration Committee reflected Levy's attendance and continuation

---

[4] The March 29, 2024 deposition was cut short after an hour, and resulted in Cammack and non-party Levy seeking a protective order to limit or terminate the deposition. See Sacerdote v. Cammack LaRhette Advisors, LLC, No. 24-CV-3129 (AT) (VF), at ECF No. 1 (April 10, 2024). On March 24, 2025, the Court denied the motion, which resulted in the need to continue Levy's deposition. See id. at ECF No. 21.

of services for the NYU Plans. See ECF No. 327-2. Additionally, the March 26, 2021 SEC filing also indicated that "most Cammack employees became employees of CapTrust" as part of the acquisition. ECF No. 326-4 at 21. Plaintiffs also point to Rezler's testimony that he continued working with the same clients following the acquisition. ECF No. 328 at 3. Minutes from the March 10, 2021 NYU Retirement Plan Administration Committee meeting indicate that Rezler was in attendance and that "all services and related fees under the existing agreement between NYU and Cammack Retirement Group will be assigned to CapTrust, pending the consent by NYU." ECF No. 327-2 at 1.

Plaintiffs aver that they waited to file the motion until they had confirmed facts through depositions. ECF No. 340 at 3-4. But even if Plaintiffs needed to confirm these facts through deposition testimony before moving for substitution, Rezler, who was lead advisor for the NYU Plans and was deposed in February 2024, confirmed many of the facts Plaintiffs rely on now. See, e.g., ECF No. 328 at 3-4, 7-8, 12. As Plaintiffs acknowledge, Rezler testified that Cammack assigned their client contracts to CapTrust, the principals of Cammack became members of CapTrust, and after the acquisition, Rezler continued working with the same clients. See id. at 3-4. Yet, despite having Rezler's testimony in February 2024, Plaintiffs did not move for substitution until more than a year later. Moreover, it is not apparent to the Court why Plaintiffs did not attempt to obtain the depositions of these executives sooner, given that the acquisition was publicly announced in February 2021 and these individuals would have had information relevant to an argument that a transfer of interest had occurred. After the Second Circuit's August 16, 2021 decision (see ECF No. 204-1), Plaintiffs still had time prior to the July 19, 2022 deadline to seek the depositions.

Nevertheless, even putting aside the lack of diligence, CapTrust has not shown that it will be prejudiced by substitution. "[A] party that is substituted in under Rule 25(c) cannot assert its own substantive rights but can only assert those claims of the original party." Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co., No. 18-CV-11386 (VSB) (KHP), 2023 WL 7135236, at *6 (S.D.N.Y. Oct. 30, 2023). CapTrust argues that if it were substituted as a party, it would seek the right to obtain discovery from Plaintiffs and Cammack. ECF No. 337 at 12. But given that a Rule 25(c) substitution involves the claims of the original party and the substituted party is not asserting its own substantive rights, it is not apparent to the Court why CapTrust would need its own discovery and why it could not rely on the discovery already obtained by Cammack. Moreover, given that a judgment against the original party binds a successor-in-interest, Am. Centennial Ins. Co. v. Aseguradora Interacciones, S.A., No. 96-CV-4062 (JFK), 1997 WL 742530, at *4 (S.D.N.Y. Dec. 1, 1997), allowing CapTrust to join the action would give it an opportunity to "protect its interests by fully litigating the case at trial." Alfadda, 1993 WL 526065, at *3.

In short, for all the reasons discussed, the Court declines to impose Rule 16's good-cause requirement on Rule 25(c) motions. But if Rule 16's good-cause requirement applied, Rule 16 presents no bar to Plaintiffs' motion, because although Plaintiffs unduly delayed in filing the motion, CapTrust has not pointed to any prejudice that it will suffer as a result of substitution. See Covet & Mane, LLC v. Invisible Bead Extensions, LLC, No. 21-CV-7740 (JPC) (RWL), 2023 WL 2919554, at *13-14 (S.D.N.Y. Mar. 23, 2023), adopted by, 2023 WL 6066168 (S.D.N.Y. Sept. 18, 2023) (concluding that lack of prejudice to defendant warranted granting leave to add trademark claims under Rule 16(b), even where plaintiff failed to demonstrate diligence); see also CAC Atl., LLC v. Hartford Fire Ins. Co., No. 16-CV-5454 (GHW), 2017 WL

14

3149340, at *4 (S.D.N.Y. July 25, 2017) ("Although the Court has found that Defendant—through its counsel—did not demonstrate the diligence ordinarily required by Rule 16(b), the Court concludes that good cause nevertheless exists because the desired amendment would result in no significant prejudice to Plaintiff.").

C. Plaintiffs may seek substitution because ERISA does not bar successor liability for claims of breach of fiduciary duty.

Turning to the merits of the Rule 25(c) motion, "[t]he decision to order substitution or joinder is to be made by considering how the conduct of the lawsuit will be most facilitated." Fashion G5 LLC v. Anstalt, No. 14-CV-5719 (GHW), 2016 WL 7009043, at *2 (S.D.N.Y. Nov. 29, 2016) (citation omitted). "The primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action." Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC, 269 F.R.D. 355, 359 (S.D.N.Y. 2010), judgment entered by, No. 05-CV-9121 (VM), 2010 WL 4237319 (S.D.N.Y. Oct. 5, 2010) (internal quotation marks and citations omitted). Substitution is thus "inappropriate where it would serve only to add duration, costs, and complexity to an action . . . [and] would prolong rather than bring the litigation nearer to its conclusion." Fashion G5 LLC, 2016 WL 7009043, at *2 (internal quotation marks and citation omitted, alteration in original). Further, "[a] court may not permit substitution 'in the absence of a transfer of interest.'" Id. (quoting In re Chalasani, 92 F.3d at 1312). Accordingly, "a determination that a party is, in fact, a successor-in-interest is a prerequisite to substitution under [Rule] 25(c)(3)." Levin v. Raynor, No. 03-CV-4697 (GBD) (THK), 2010 WL 2106037, at *2 (S.D.N.Y. May 25, 2010).

CapTrust argues that ERISA bars Plaintiffs' theory of successor liability. ECF No. 337 at 12-15. CapTrust's argument relies on Section 409(b) of ERISA, which states that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before

15

he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). CapTrust thus contends that Section 409(b) precludes application of successor liability to hold it responsible for any breaches of fiduciary duty by Cammack.

First, although CapTrust argues that the text of ERISA does not provide for successor liability in general (ECF No. 337 at 13), that has not stopped courts from applying successor liability in the context of ERISA. For example, in New York State Teamsters Conference Pension and Retirement Fund v. C&S Wholesale Grocers, 24 F.4th 163, 179 (2d Cir. 2022), the Second Circuit held that successor liability applied to withdrawal liability under ERISA. Courts also have applied successor liability to hold a successor entity responsible for the delinquent ERISA contributions of its predecessor. See Einhorn v. M.L. Ruberton Const. Co., 632 F.3d 89, 93-99 (3d Cir. 2011) (concluding that successor liability may be applied to hold corporate entity that bought assets of another entity liable for delinquent ERISA fund contributions); Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1327-29 (7th Cir. 1990) (holding that successor purchaser of assets may be liable for the seller's delinquent ERISA fund contributions); see also Stotter Div. of Graduate Plastics Co., Inc. v. Dist. 65, United Auto Workers, 991 F.2d 997, 1002 (2d Cir. 1993) (finding that arbitrator did not exceed his authority by imposing liability on the successor-employer for delinquent contributions owed under the predecessor's CBA with a union).

Second, the underlying purpose for ERISA supports application of successor liability to the particular ERISA context raised by the allegations here: a breach of fiduciary duty. In New York State Teamsters, the Second Circuit, in concluding that successor liability should apply, reasoned that "ERISA is precisely the sort of statute—embodying the sort of federal labor relations policy goals—to which the successor liability doctrine can legitimately apply." 24 F.4th

16

at 179. As the Circuit explained, ERISA "effects the goals of federal labor policy" and is "therefore part of the labor law context in which successor liability originates." Id. at 181.

And although New York State Teamsters involved withdrawal liability, "adopting the federal common law of successor liability would best serve ERISA's purposes." See Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al., 902 F.3d 597, 611-12 (6th Cir. 2018). As the Supreme Court explained, by enacting ERISA Congress wanted to guarantee that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 375 (1980). The fiduciary obligations in ERISA serve to protect the interests of employees, attempting to ensure that fiduciaries discharge their duties "solely in the interest of the participants and beneficiaries" of the plan and "for the exclusive purpose" of "providing benefits" and "defraying reasonable" administrative expenses. 29 U.S.C. § 1104(a)(1)(A). Given the overarching purpose of ERISA, applying successor liability makes sense particularly because the successor must have had notice of its predecessor's liability for successor liability to apply. See New York State Teamsters, 24 F.4th at 177. As the Seventh Circuit explained, "[w]hen the successor company knows about its predecessor's liability . . . the presumption should be in favor of successor liability," as that result "prevents the externalizing of the liability"—that is, the penalization of the plan participants—"without disappointing the reasonable expectations of investors." Upholsterers' Int'l Union Pension Fund, 920 F.2d at 1327 (quoting EEOC v. Vucitech, 842 F.2d 936, 945 (7th Cir. 1988)). To conclude that successor liability does not apply would permit fiduciaries to evade liability by transferring assets to a related entity at the expense of plan participants.

17

Section 409(b) presents no bar. As Plaintiffs argue, Section 409(b) addresses the scope of fiduciary liability vis-à-vis a plan's fiduciary and an unrelated individual who assumes the role of fiduciary. ECF No. 340 at 5. That provision limits the extent to which the unrelated individual can be held responsible for any breaches of fiduciary duty by a predecessor fiduciary. Although the new fiduciary may not be held responsible for breaches that "do[ ] not occur on his watch," the "events occurring either during *or before*" the new individual's term "as a Plan fiduciary may have put that [new individual] on notice" of a prior breach. In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 476 (S.D.N.Y. 2005) (emphasis in original). The whole theory of successor liability, however, is that the successor entity steps into the shoes of the original entity. See Automotive Indus. Pension Trust Fund v. Ali, No. C-11-5216 (JCS), 2012 WL 2911432, at *8 (N.D. Cal. July 16, 2012) (explaining that "successor liability has been treated as merely a theory for imposing liability on a defendant based on some other person's or entity's ERISA violation"); McDonald, 2015 WL 2091841, at *2 (noting that "once the judgment creditor establishes that successor liability exists, the successor-in-interest is deemed to stand in the shoes of the original party in all respects including with regard to questions of jurisdiction and venue") (internal quotation marks and citation omitted); Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., No. 03-CV-1036 (DJS), 2009 WL 10687800, at *6 (D. Conn. Nov. 19, 2009) (explaining that successor entity "allegedly has stepped in the shoes, and assumed the liability, of the predecessor" in successor liability); Madonna v. Francisco, No. 13-CV-807, 2014 WL 981568, at *4 (E.D. Pa. Mar. 13, 2014) (explaining that "successor liability is simply a means of putting another party in the same shoes as the party against whom a plaintiff has a claim"). Plaintiffs are thus not attempting to hold CapTrust responsible for fiduciary misconduct of an unrelated entity. They merely seek to hold CapTrust responsible for Cammack's breaches of

18

fiduciary duty, which CapTrust would have assumed by virtue of its acquisition of Cammack and sufficient continuity of Cammack's business operations.

The only case the parties point to that has discussed the application of Section 409(b) and successor liability is In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation, a lower court case from the Western District of Washington. No. 08-MD-1919 (MJP), 2009 WL 3246994 (W.D. Wash. Oct. 5, 2009). The court there noted that the question of "[w]hether a company can be liable based upon a common law theory of inherited liability for breach of ERISA fiduciary duties is a question of first impression" and declined to apply the test for successor liability to determine whether the entity (JPMorgan Chase) had inherited its predecessor's fiduciary liability. Id. at *14 The parties argued (and the court agreed) that JPMorgan Chase could not have assumed fiduciary liability by purchasing Washington Mutual Bank because the purchase was from the Federal Deposit Insurance Corporation ("FDIC") after the FDIC had seized the bank following its filing for bankruptcy, and the FDIC did not have the authority to transfer the liability given its limited authority over bank holding companies. Id. at *1, 13. In responding to the argument by the plaintiffs in that case that ERISA's broad remedial purpose favored extending liability, the court pointed to Section 409(b). Id. at *14. As an out-of-district, lower court decision, In re Washington Mutual is not binding on this Court. Peterson v. Katonah Lewisboro Sch. Dist., No. 13-CV-51 (VB), 2014 WL 3891253, at *2 (S.D.N.Y. June 27, 2014) (stating that "out-of-district case is not binding"). And because the court's reasoning in that case is not persuasive, the Court declines to apply it here. For the reasons discussed, Section 409(b) does not bar Plaintiffs' Rule 25(c) substitution here.

D.  CapTrust's request for an evidentiary hearing.

Turning to whether substitution is appropriate, it is well settled that "a court may not permit substitution 'in the absence of a transfer of interest.'" Fashion G5 LLC, 2016 WL

19

7009043, at *2 (quoting In re Chalasani, 92 F.3d at 1312). Therefore, "a determination that a party is, in fact, a successor-in-interest is a prerequisite to substitution under [Rule] 25(c)(3)." Levin, 2010 WL 2106037, at *2. That determination, however, is a fact intensive inquiry. See Greystone Bank v. Peralta, No. 10-CV-0695 (BMC), 2010 WL 3767619, at *1 (E.D.N.Y. Sept. 20, 2010) (stating that determination of whether a transfer of interest occurred is a fact intensive inquiry).

Plaintiffs point to various facts that they contend establish that CapTrust is a successor-in-interest to Cammack. ECF No. 328 at 6-12. And although CapTrust contends that its purchase of assets from Cammack do not support application of successor liability, CapTrust does not point to specific factual allegations that it claims are disputed and are necessary to establish successor liability. CapTrust also requests an evidentiary hearing. ECF No. 337 at 15-16. An evidentiary hearing may well be necessary, given the fact intensive nature of the inquiry into successor liability, but at this juncture, it is not apparent to the Court which specific facts relied on by Plaintiffs to show substantial continuity of the business operations are disputed by CapTrust.

**CONCLUSION**

Accordingly, CapTrust is hereby directed to submit a letter identifying specific factual allegations that it contends are disputed and for which an evidentiary hearing is necessary by **March 2, 2026**. If Plaintiffs wish to do so, they may respond to CapTrust's filing by **March 16, 2026**.

**SO ORDERED.**

DATED:  New York, New York
         February 9, 2026

                                      VALERIE FIGUEREDO
                                      United States Magistrate Judge